KELLY *et al.*, *Plaintiffs in Error*, v. THUEY *et al.*

In Banc, March 29, 1898.

1. **Contracts:** ALTERATIONS: BURDEN OF PROOF. The burden is on the plaintiff in a suit on a contract to satisfactorily explain alterations therein.

2. ——: ——: IMMATERIAL AND NULLIFYING. Any change on the face of a contract is a *nullifying alteration*. A payee or obligee can not make a change in the paper which he holds, and then assert that the change was *immaterial*. All alterations nullify the instrument except such as come under the distinction of spoliation by a stranger, or the filling of blanks therein purposely left to be filled or authorized to be filled.

3. ——: ——: RATIFICATION. When suit is instituted on a contract altered by plaintiff's agent, as if it had not been altered, this fact will be deemed a ratification of the alteration, no matter when it was made; and especially will this be the ruling if plaintiff's reply denies that there was any alteration. In that case such alteration can not be regarded as a mere spoliation by an unauthorized person. By suing on the contract in its altered state the plaintiff adopted the the alteration and made it his own. (BRACE and ROBINSON, JJ., dissenting.)

4. ——: UNASCERTAINABLE PRICE: PAROL EVIDENCE. A contract, which neither states the price nor furnishes the means or data whereby that price can be computed or ascertained, is an invalid contract and can not be enforced. The memorandum of the contract must be complete in and of itself; parol evidence is not admissible to *piece out* the incomplete writing.

5. ———: EXECUTION DENIED UNDER OATH. It is not necessary that defendant's denial of the execution of the instrument sued on be verified by affidavit, if the instrument is executed by both parties.

6. ———: ———: PRACTICE: WAIVER. That the execution of the instrument sued on was not denied under oath, can not be raised for the first time in this court. So that, if no motion was made for judgment on the pleadings, no objection was made to the introduction of evidence, and the motion for a new trial did not specify that the answer failed to deny the execution of the contract under oath, it will be too late to raise the point of the sufficiency of the answer in this court.

7. Former Appeals: WHEN RES ADJUDICATA. When no direction is given on a former appeal in remanding a cause for new trial, there is no adjudication made of the facts at issue in the case, and the matter at issue remains as it was at first, unhampered by anything which occurred on the former appeal.

8. Contract: SPECIFIC PERFORMANCE: PRINCIPAL AND AGENT. An agent may enter into a contract for the purchase of land for an undisclosed principal; and the principal may maintain a suit in his own name and enforce the contract, it being immaterial whether the principal was known or unknown during the transaction, or whether the party supposed he was dealing with the agent personally or on behalf of some other third person. (Overruling *Kelly v. Thuey*, 102 Mo. 522; ROBINSON and BRACE, JJ., dissenting.)

*Error to Jackson Circuit Court.*—HON. FRANK HAGERMAN, Special Judge.

AFFIRMED.

*Doggett & Rosenzweig* and *Dobson & McCune* for plaintiffs in error.

(1) In actions for specific performance each case must be determined on its own merits. If upon a whole view of the facts and circumstances, the court shall be of the opinion that the contract is fair, just and equitable, it will use its extraordinary authority and decree specific performance. *Ivory v. Murphy*, 36 Mo. 542; 2 Story's Eq. Jur. [13 Ed.], sec. 742; *Tyson v. Watts*, 1 Md. Ch. 13. (2) The findings of the Supreme Court on the facts at issue in the previous

actions are final. Wells on Res. Adj. [1 Ed.], secs. 368, 378 and 380; ·Gibson v. Chouteau, 7 Mo. App. 1; Cooley v. Warren, 53 Mo. 166; Wood v. Ensel, 63 Mo. 193; Rice v. McFarland, 34 Mo. App. 404; Belch v. Miller, 37 Mo. App. 628; Parker v. Straat, 39 Mo. App. 616; Preston v. Ricketts, 91 Mo. 320; Keith v. Keith 97 Mo. 223. (3) The execution of the written instrument upon which the petition is founded, not having been denied by answer, verified by affidavit, should have been adjudged confessed. R. S. 1889, sec. 2186; Gleason v. Hamilton, 138 N. Y. 353; Coburn v. Webb, 56 Ind. 96; Green Co. v. Wilhite, 29 Mo. App. 465; Zervis v. Unnerstall, 29 Mo. App. 474; Collins v. Bowmer, 2 Mo. 195. (4) The presumption in addition to the weight of the evidence is that the contract was altered before signing and delivery. McCormick v. Fitzmorris, 39 Mo. 24; Holton v. Kemp, 81 Mo. 661; Cox v. Palmer, 1 McCrary, 431; Paramore v. Lindsey, 63 Mo. 63. (5) Whenever an alteration has been made by common consent of the parties or before delivery, the instrument will not be avoided. Evans v. Foreman, 60 Mo. 449; Woodley v. Constant, 4 Johns. 54; Speake v. U. S., 9 Cranch, 28; Stites v. Probst, 69 Ill. 382. (6) The right to fill blanks in a written instrument is a recognition of this doctrine. Smith v. Crooker, 5 Mass. 538; Whitney v. Daniel, 1 Hen. and Mumf., 391; Eagleton v. Gutteridge, 11 Mees. & Wel. 465; Adams v. Frye, 3 Met. 108; Visher v. Webster, 8 Cal. 109; Mitchell v. Culver, 7 Cow. 335; Owen v. Perry, 25 Iowa, 412. (7) Whenever neither the rights nor interests, duties nor obligations of either of the parties to the written instrument, are in any way changed by an alteration thereof, the alteration is immaterial, and will not avoid the instrument. Derby v. Thrall, 44 Vt. 413; Duker v. Franz, 7 Bush, 273; Bldg. Ass'n v. Fitzmaurice, 7 Mo. App. 283. (8) The general princi-

ple is that an alteration, to avoid an instrument must be material—that is, such an one as causes the instrument to speak a language different in legal effect from that which is originally spoken. *Draper v. Wood*, 17 Am. Rep. 97; *Express Pub Co. v. Aldine Press*, 126 Pa. St. 352; *Nichols v. Johnson*, 10 Conn. 192; *Bank v. Carson*, 60 Mich. 432; *Cornell v. Nebeker*, 48 Ind. 459; *Burnham v. Ayer*, 95 N. H. 354; *Miller v. Reed*, 27 Pa. St. 244.    (9)   An alteration is also harmless when made to correct a mistake, and to conform the instrument to what all parties to it agreed, or intended it should be. *Murray v. Klinzing*, 64 Conn. 78; *Ames v. Colburn*, 11 Gray (Mass.), 390; *Eagleton v. Gutteridge*, 11 Mees. & Wel. 465; *Boyd v. Brotherson*, 10 Wend. (N. Y.) 90; *Greene County to use v. Wilhite*, 29 Mo. App. 459.    (10)   Fraud is the foundation of the rule that an alteration avoids the enforcement of a written instrument. *Fisher v. King*, 25 Atl. Rep. (Pa.) 1029; *Wolferman v. Bell*, 32 Pac. Rep. 1017; *Adams v. Frye*, 3 Met. (Mass.) 103; *Rogers v. Shaw*, 59 Cal. 260; *Huntington v. Finch*, 3 Ohio St. 445.    (11)   The rule in regard to the alteration of negotiable paper is more stringent than that respecting the alteration of deeds or other written instruments. *Burnett v. McCluey*, 78 Mo. 676; *Neff v. Horner*, 63 Pa. St. 327; *Nichols v. Johnson*, 10 Conn. 192.    (12)   An alteration made by the agent of the vendor, or obligor, with his express or implied consent does not avoid his written instrument. *State to use v. Dean* 40 Mo. 464; *Owen v. Perry*, 25 Iowa, 412; *Field v. Stagg*, 52 Mo. 534; *Nichols v. Johnson*, 10 Conn. 192; *Pequawket Bridge v. Mathes*, 8 N. H. 139; *Morrill v. Otis*, 12 N. H. 466; *Burnham v. Ayer*, 35 N. H. 351; *Nickerson v. Swett*, 135 Mass. 514; *Van Brunt v. Eoff*, 35 Barb. (N. Y.), 501; *Bigelow v. Stephens*, 35 Vt. 521.    (13)   It was not necessary that the purchase price should have been

expressed in the memorandum of sale, provided that the parties had agreed upon the same. The suit is based on the oral contract. The statute of frauds does not require the contract of sale to be in writing. Tiedeman on Sales, Bennett's Notes [Ed. 1888.], 199; *Bean v. Valle*, 2 Mo. 126; *Halse v. Halse*, 8 Mo. 303; *Ellis v. Bray*, 79 Mo. 227; *Fricker v. Tomlinson*, 1 Man. & G. 772; *Gibson v. Hollan*, 1 L. R. C. P. 1. (14) Equity vested the land in question in Kelly upon the execution of the contract sued on. Bush, in the eye of equity, is the trustee of a naked trust, and he can not be heard to invoke equitable defenses, when he is shown to be a fraudulent purchaser. Bush does not even claim to be a *bona fide* purchaser without notice. *Halse v. Halse*, 8 Mo. 303; *Le Neve v. Le Neve*, Amb. 439; 11 White & Tudor's Lead. Cas. Eq., part 1, p. 109; Wade on the Law of Notice, sec. 50, p. 27; 1 Story's Eq. Jur. [11 Ed.], secs. 395, 397; *Mulliken v. Graham*, 22 Smith (Pa. St.), 484; *Rupert v. Mack*, 15 Ill. 542; *Cox v. Milner*, 23 Ill. 409; *Curtis v. Mundy*, 3 Met. 407; *Bond v. Hopkins*, 1 Sch. & Lef. R. 413; *Stephenson v. Smith*, 7 Mo. 610; *Widdicombe v. Childers*, 84 Mo. 382; *Meier v. Blume*, 80 Mo. 179; *Thompson v. Henry*, 85 Mo. 451.

*Karnes, Holmes & Krauthoff* for defendants in error.

(1) An alteration was apparent on the face of the contract and the burden of proof was on the plaintiffs to explain the alteration. *Stilwell v. Patton*, 108 Mo. 360; *Paramore v. Lindsey*, 63 Mo. 66; *Matthew v. Coalter*, 9 Mo. 676; *Cox v. Palmer*, 1 McC. 431, 434; *U. S. v. Linn*, 1 How. (U. S.) 111; Lawson Pres. Ev., rule 85, p. 389; Jones Const. Com. and Trade Cont., sec. 273 *et seq.;* Stephens' Dig. Ev. [Chase's

Ed.], p. 158; 3' Randolph Com. Paper, secs. 1784, 1785. (2) The evidence sustains the finding of the trial court: "The contract sued on was, without consent of the defendants or either of them, by Daniel T. Kelly changed after the execution by interlining therein the words, ·'six hundred and sixty-four dollars.'" (3) The opinion of the Supreme Court in the first case of *Kelly v. Thuey*, 102 Mo. 522, 527, is not an adjudication of the facts at issue in this case.  The contract sought to be enforced in this case is signed by Daniel T. Kelly and Richard Thuey and Bridget Thuey.  All that was decided in *Kelly v. Thuey*, 102 Mo. 522, 527, in regard to the alteration was:  "The proof does not sustain the averment."  Herman on Estop., p. 118; *State v. Newkirk*, 49 Mo. 472; Wells Res. Adj., sec. 619; *Gurley v. Railroad*, 26 S. W. Rep. 953; *Boone v. Shackleford*, 66 Mo. 497; *Bird v. Sellers*, 26 S. W. Rep. 670; *Gardner v. Railroad*, 150 U. S. 349; *Carroll v. Inter-State, Etc., Co.*, 107 Mo. 653.  (4) The contract sued on having been, without the consent of the Thueys, altered after its execution, can not be specifically enforced.  *Haskell v. Champion*, 30 Mo. 136; *Evans v. Foreman*, 60 Mo. 449; *Bank v. Armstrong*, 62 Mo. 68; *Bank v. Dunn*, 62 Mo. 80; *Moore v. Hutchinson*, 79 Mo. 430; *Bank v. Fricke*, 75 Mo. 178; *Morrison v. Garth*, 78 Mo. 434; *Moore v. Bank*, 22 Mo. App. 684; *Hord v. Taubman*, 79 Mo. 101; *Allen v. Dornan*, 57 Mo. App. 288.· (5) Counsel for plaintiffs in error define a material alteration to be "such an one as causes the instrument to speak a language different in legal effect from that which it originally spoke."  Tested by this rule, the alteration was material.  *Ringer v. Holtzclaw*, 112 Mo. 522; *Smith v. Shell*, 82 Mo. 215.  "Decided cases everywhere require that the memorandum should mention the price."  *Williams v. Morris*, 95 U. S. 455; *Grafton v. Cummings*, 99 U. S. 106; 1 Warvelle on Vendors, p. .

105, sec. 10; 1 Reed, Stat. Frauds, sec. 417; Waterman, Spec. Perf., sec. 146; Pomeroy, Spec. Perf., sec. 94; Fry, Spec. Perf., sec. 335; 8 Am. and Eng. Ency. of Law, p. 726. (6) The point that the answer should have been verified is not well taken. No such objection was presented to or decided by the trial court. Otherwise defendants in error could and doubtless would have verified their answer. The petition set out the contract sued on in exact words. Its terms were pleaded in no other manner. Defendants alleged an interlineation in the contract. Plaintiffs replied denying the new matter. No objection was made to the introduction of any evidence of the alteration. No motion was made for judgment on the pleadings. The motion for new trial did not specify any such ground of exception. R. S. 1889, sec. 2302; *Danforth v. Railroad*, 27 S. W. Rep. 715; *Girard v. St. Louis Car Wheel Co.*, 27 S. W. Rep. 652; *Nolan v. Johns*, 28 S. W. Rep. 892; *Thompson v. Wooldridge*, 102 Mo. 510. Objections to the sufficiency of an answer must be presented in the trial court and can not be raised for the first time on appeal. *Klein v. Fischer*, 30 Mo. App. 568; *Smith v. Lindsey*, 89 Mo. 75; *Edmondson v. Phillips*, 73 Mo. 57; *Haynes v. Trenton*, 27 S. W. Rep. 622; *Hayden v. Railroad*, 28 S. W. Rep. 75. Objections to the want of verification of a pleading are waived by pleading over. Boone, Code Plead., secs. 34, 261, 270; *Loan and Trust Co. v. Organ*, 36 Pac. Rep. 733. The objection must be made in the trial court. *Arnold v. Slaughter*, 36 W. Va. 589; *Speer v. Craig*, 16 Col. 478; *San Francisco v. Itsell*, 80 Cal. 57; *Lange v. Dammier*, 119 Ind. 567. (7) It is lastly contended that even if Daniel T. Kelly did interline the contract after its execution, he had full authority as agent of Thuey to make the change. No such contract or authority was pleaded or relied on in the trial court.

*Bensieck v. Cook,* 110 Mo. 173; *Tomlinson, v. Ellison,* 104 Mo. 105 *Green v. St. Louis,* 106 Mo. 454.

SHERWOOD, J.—This cause has been here before, 102 Mo. 522; it is an equitable proceeding for specific performance, and the record has been handed me by the present chief justice in order that I may prepare an opinion. The suit is grounded on the following contract:

"KANSAS CITY, MO., Dec. 16, 1885.

"Received of D. T. Kelly, fifty dollars, being in part payment of the purchase price of fifty-two feet by fifty off the west end of lot No. 7, block 12, of Vineyard's Addition to the City of Kansas, Jackson county, Mo. I agree to make and deliver a good and sufficient warranty deed conveying said premises to said Kelly free of all incumbrances without delay and as soon as the abstract of title thereto shall have been examined and approved, at which time said Kelly shall pay to me the sum of nine hundred and fifty dollars in cash, and the balance of the purchase price, six hundred and sixty-four dollars he shall pay in three equal annual installments, with 8 per cent. interest, to be secured by deed of trust executed on said property. If I shall fail to convey good title to said Kelly as aforesaid, then said fifty dollars shall be refunded to him.

"RICHARD + TOOEY,<br>"BRIDGET + TOOEY,<br>"D. T. KELLY.

"Witness: KATIE TOOEY."

The first agreement between the parties was also interlined. The original of the first agreement could not be found by defendants at the trial of this case.

It was offered from the record in the first case of *Kelly v. Thuey*, and, as it there appeared, is as follows:

"KANSAS CITY, December 16, 1885.

"Received of D. T. Kelly fifty dollars as part purchase money for fifty-two feet of the west end of his lot situated on Troost Avenue and Eighteenth street, the balance of the money to be paid as follows:    One
six hundred dollars
thousand dollars cash on delivery of deed and abstract, balance to be paid in equal parts in one, two and three years in equal annual payments at 8 per cent per annum.    It is understood that for the two feet, party of the first part shall pay same in the same proportion.

"BRIDGET + TOOEY,

"RICHARD + TOOEY.

"Witness: D. T. KELLY,

"KATIE TOOEY.

"The balance of purchase money to be secured by bond and mortgage on said property.    Party of the second part shall pay all taxes after the year 1885 and for party of the first part to pay balance.

"D. T. KELLY,

"Witness."

The *fac-simile* of the litigated contract accompanies this opinion and is here inserted.

Kansas City, Mo., Dec 16th 1885

Rec'd of D. T. Kelly Fifty dollars *(illegible handwritten text)* in part payment of the purchase price of *(illegible)* *(illegible)* Section the South West end of Lot No 4 Block Twelve of Vineyard Addition to the City of Kansas Jackson County Mo

I agree to make and deliver a good and sufficient warranty deed conveying said premises to said Kelly free of all incumbrances within *(illegible)* day and as soon as the Abstract of Title *(illegible)* shall have been examined and approved at which time said Kelly shall pay the sum of Nine Hundred and fifty dollars in Cash And the balance of the purchase price No *(illegible)* shall pay *(illegible)* *(illegible)* *(illegible)* said *(illegible)* with 8 per cent interest to be secured by deed of trust executed on said property. If I shall fail to convey good title to said premises to said Kelly as *(illegible)* then said Fifty dollars shall be *(illegible)* to him

Richard T. Ivory    Witness    Katie Ivory
Bridget Ivory
D. T. Kelly

FAC-SIMILE OF ORIGINAL CONTRACT.

The abstract furnished by plaintiffs does not present an accurate copy of the contract in suit, in that no evidence of interlineation or alteration appears on its face. Nor does the petition count on or notice such interlineation or alteration, but proceeds as if nothing of the kind had occurred.

The petition among other things alleges that Daniel T. Kelly has an individual interest by reason of his unpaid commissions, and at the former trial Daniel T. Kelly swore that he acted as the agent of *both* Thuey and J. T. Kelly. "I bought it (the lot) for J. T. Kelly and myself, and the interest I had in it grew from what I would get from *both* of them for my trouble." And at the last trial he also testified that he was the agent of both the contracting parties.

The answer of defendants pleaded that defendant Thuey executed the instrument described in the petition, but that the words "six hundred and sixty-four dollars" were written in after Thuey had signed the instrument and that said alteration was made without his knowledge or consent. Plaintiffs replied with a general denial.

The instrument in controversy is written in *black* ink; it was prepared by J. C. Tarsney, to whom Daniel T. Kelly handed the original instrument drawn by himself on two leaves of a book and signed by Thuey and wife and taken by Daniel T. Kelly to Tarsney, to whom Kelly said it would be better to have it in *"more legal form."* Accordingly Tarsney drafted the instrument in question, which was then taken out to Thuey's by Daniel T. Kelly, where it was signed by Thuey and wife in *blue* ink, and witnessed by D. T. Kelly and Katie Thuey in ink of the same color. This contract drawn by Tarsney, at the instance of Daniel T. Kelly, has the interlined words *"six hundred and sixty-four dollars"* written in ink of a

*brown* color and in a different handwriting from that of the body of the contract. The interlined words "six hundred dollars" in the first contract were also written by Daniel T. Kelly, as he admitted at the trial which occasioned the present writ of error. Daniel T. Kelly, the *magna pars fuit* in the negotiation of the contract, testified at a former trial that he had interlined the words aforesaid at Thuey's house in the presence of Thuey, his wife and daughter. Asked who gave him the pen and ink with which to write the interlineation, he answered "one of the women, I couldn't tell which." On the trial of the present case he stated on his direct examination that he made the interlineation on his way to Thuey's house, but on cross-examination he could not tell where he made the interlineation, saying in response to repeated questions, "*I don't know.*" Katie Thuey, a disinterested witness, testified that she signed her name to the contract as a witness; that alterations now present in the contract, were not there at the time; that the only writing Kelly did was to write the names of her father and mother; that then he signed his name and she signed hers, and that all the names were written in the blue ink that they had there in her father's house. On the former trial Daniel T. Kelly testified that there was an interlineation in a different colored ink made by him at a similar part of the first contract, and before its execution; that interlineation being "six hundred dollars," while the one in the second contract was "six hundred and sixty-four dollars."

1.   Upon this state of the testimony and evidence the special judge very pertinently observes: "If this interlineation in the *first* contract was made prior to the execution, it is passing strange that it was not noticed by Mr. Tarsney when he undertook to copy it into "legal form," for he seems to have incorporated

into the second contract every provision of the first with the exception of the interlined matter. Yet if Tarsney undertook to *copy* the first contract, it is not strange that he should omit the amount of the balance of the purchase price if there was a like omission in the paper from which he was copying. The two contracts had then interlineations of a similar nature, with different kinds of ink, and in the handwriting of a party in interest. A fair inference arises that both were made at the same time and after the execution, and for the purpose in the race with Bush to have a *certain* contract which could be certainly enforced."

It is impossible of belief that Tarsney, a lawyer, given a rough draft of a contract which he was to put in "more legal form," should embody in substance in the new draft of that contract, everything which the original contract contained, except the interlined words "six hundred dollars" which stood out in different colored ink and in bold relief on the face of the original. We therefore hold that the physical facts already related so discredit Daniel T. Kelly as to render his testimony unworthy of belief. Consequently, we concur with the special judge in holding that the interlineation in question was made by Daniel T. Kelly *after* the execution of the contract and without the knowledge or consent of either Thuey or his wife.

2. Besides, it is not to be forgotten that in cases like the present, the burden is on the plaintiffs to satisfactorily explain the alteration. *Matthews v. Coulter*, 9 Mo. 696, 702; *Lubbering v. Kohlbrecher*, 22 Mo. 596; *McCormick v. Fitzmorris*, 39 Mo. 24, 34; *Paramore v. Lindsey*, 63 Mo. 63, 66, 67; *Holton v. Kemp*, 81 Mo. 661; *Stillwell v. Patton*, 108 Mo. 352, 360. The plaintiffs in this case, instead of thus explaining the alteration, have introduced such testimony as with all natural and reasonable inference to be drawn therefrom, affords

cogent and conclusive proof that an alteration was made after the execution of the instrument.

3.   But it is said that the alteration in this case is *immaterial*.   Of this assertion it may be observed that it is the firmly rooted doctrine of this court and has been ever since the ruling made in *Haskell v. Champion*, 30 Mo. 136, that it is not permitted to a payee or obligee to make a change in the paper which he holds, and then having made it assert, *when caught*, that he *meant no harm by it* and that it is *immaterial*.   Hitherto we have tolerated no alteration in the contract; and we have always regarded and still regard any change *on the face* of the paper, as a *nullifying alteration*.   By thus holding we intend to make the payees or obligees of money-bearing or title-bearing obligations *honest*, whether that disposition accords with their *natural inclinations* or not.   Of course, by these remarks we do not refer to cases of spoliation by a stranger nor to filling blanks purposely left to be filled or authorized to be filled, because we have held that even in the case of a *deed* verbal authority is sufficient to make valid the filling of a blank left for the name of the grantee.   *Field v. Stagg*, 52 Mo. 534.

4.   The contract in suit, after its execution, was, as James T. Kelly testifies, received by him from his brother Daniel that afternoon or the next morning, and placed by him in his safe. It does not appear from the testimony of James T. that this contract ever afterward left his possession until suit brought upon it, so that it is a reasonable inference that it was altered before it was returned to him by his agent Daniel. But, in any event, inasmuch as suit was instituted on the contract as altered, as if it had not been altered, this will be deemed a ratification of the alteration made by Daniel T. Kelly, no matter when he made it. Emphasis is given to this view by the fact that the reply of plain-

tiffs denies that there was any alteration. Hence such alteration can not be regarded as a mere spoilation by an unauthorized hand, since by suing on the contract in its altered state, James T. Kelly adopted that alteration and made it his own.

5. In making a contract involving the statute of frauds, there are three essential and inevitably necessary ingredients: *First*, the parties; *second*, the subject-matter; *third*, the consideration or price. Absent any one of these ingredients, *there is no contract*. Certainty in *price* is as much a *sine qua non* as certainty in parties or subject-matter. On this topic a great chancellor in his Commentaries on American Law remarks: "The contract must, however, be stated with reasonable certainty, so that it can be understood from the writing itself, without having recourse to parol proof. Unless the essential terms of the sale can be ascertained from the writing itself, or by a reference contained in it to something else, the writing is not a compliance with the statute; and if the agreement be thus defective, it can not be supplied by parol proof, for that would at once introduce all the mischiefs which the statute of frauds and perjuries was intended to prevent." 2 Kent [14 Ed.], *511. To the same effect are very numerous authorities, many of them stating in terms that the price of the property sold can not be omitted. Thus a work of recognized merit says:

"Sec. 148. II. *The Price.*—In all contracts of sale, assignment, and the like, the price is, of course, a material term. It must either be fixed by the agreement itself, or means must be therein provided for ascertaining it with certainty. In the absence of such provision, either stating it or furnishing a mode for fixing it, the agreement would be plainly incomplete, and could not be enforced; and if the contract is written, this term must appear in the memorandum or

written instrument." Pomeroy's Spec. Perf. [2 Ed.], sec. 148. See, also, *Grafton v. Cummings*, 99 U. S. 100, 106; 8 Am. and Eng. Ency. of Law, 726; Browne, Stat. Frauds [5 Ed.], sec. 376; 1 Warvelle on Vendors, p. 105, sec. 10; Fry, Spec. Perf., sec. 335; Waterman, Spec. Perf., sec. 146; 1 Reed, Stat. Frauds, sec. 417; *Williams v. Morris*, 95 U. S. 444, 455. In this case the contract neither states the price nor furnishes the means or data whereby that price can be computed or ascertained, and is therefore an invalid contract and wholly incapable of enforcement. The memorandum being required to be complete in and of itself, parol evidence can not be admitted to *piece out* the incomplete writing and make it a complete instrument. At one time in this court the *heresy* was announced that parol testimony was admissible for the purpose indicated. *O'Neil v. Crain*, 67 Mo. 250. The last erroneous adjudication on this subject is found in *Ellis v. Bray*, 79 Mo. 227; but the contrary and correct ruling was declared in *Ringer v. Holtzclaw*, 112 Mo. 519, and followed in *Boyd v. Paul*, 125 Mo. 9; 28 S. W. Rep. 171. We hold, therefore, that there is *no contract* in the case at bar; that is, such an one as satisfies the requirements of the statutes of frauds.

6. It is insisted that the answer of defendants, as to its denial of the execution of the controverted instrument should have been verified by affidavit. Section 2088, Revised Statutes 1889, requires that "when any petition shall be founded upon any instrument of writing, charged to have been executed by the other party . . . . . . it shall be filed with said petition." Upon this section it has been ruled that it does not apply to instruments executed by *both* parties. *Campbell v. Wolf*, 33 Mo. 459; *Bowling v. Hax*, 55 Mo. 446. Now section 2186, on which plaintiffs rely, provides "when any petition shall be founded upon any

instrument in writing, charged to have been executed by the other party ....... the execution of such instrument shall be adjudged confessed unless," etc. This section was enacted in 1883, long after the adjudications in 33 Mo. and 55 Mo. *supra*, were made, so that the presumption may well be indulged that the legislature when using for the second time the words *"charged to have been executed by the other party,"* used them in the same sense that they were used in the former section, and as determined by two previous adjudications of this court.   And in this connection it is not to be forgotten that the words in question are found in each instance in chapter 33, Revised Statutes 1889, entitled "Code of Civil Procedure" and "their meaning may be inferred from earlier statutes in which the same words or language has been used, where the intent was more obvious or had been judicially established."   Sutherland, Stat. Construc., secs. 229, 255. For this reason we hold that section 2186 does not apply and was not intended to apply to instruments executed by *both* parties.

7.   But whatever might be the proper construction of section 2186, is of no moment now, inasmuch as no motion was made for judgment on the pleadings; no objection made to the introduction of any evidence touching the alteration; nor did the motion for new trial specify any such supposed insufficiency of the answer.   In such circumstances it is quite too late to raise such a point in this court for the first time. R. S. 1889, sec. 2302; *Danforth v. Railroad*, 123 Mo. 196; *Girard v. Car Wheel Co.*, 123 Mo. 358; *Nolan v. Johns*, 126 Mo. 159; *Smith v. Lindsey*, 89 Mo. 76; *Edmonson v. Phillips*, 73 Mo. 59; *Hayden v. Railroad*, 124 Mo. 566.

8.   The further contention is made that the opinion in *Thuey v. Kelly*, 102 Mo. 522, is an adjudication of the facts at issue in this case.   The testimony

in this case is entirely different from what it was when the case was here before, so the special judge has stated. When the original case was here, it was held that the evidence showed that words were interlined before the contract was executed. Here the present record contains the most convincing evidence that the interlineation was made after the execution without Thuey's knowledge or consent. And the judgment was reversed and the cause remanded on the ground that the suit should have been brought in the name of D. T. Kelly. But there were no directions given in remanding the cause. So that there was no adjudication made and the matter remains as it was at first, unhampered by anything which occurred on a former appeal. It would be of most pernicious consequence if every error which occurs in this court should bind the parties litigant on a retrial.

9. And speaking about errors, we think this court erred in holding in *Kelly v. Thuey, supra,* that the right to enforce specific performance existed in D. T. Kelly and him alone; because it is very familiar learning that the agent may enter into a contract for the purchase of land for an undisclosed principal. And the principal may maintain a suit in his own name and enforce the contract, it being immaterial whether the principal was known or unknown during the transaction, or whether the party supposed he was dealing with the agent personally and on his own behalf. Pomeroy, Spec. Perf. [2 Ed.], sec. 89; Fry, Spec. Perf. [3 Ed.], secs. 238, 239, 240, and cases cited. We shall decline to follow the ruling of that case on this point.

For the reasons given above we affirm the decree dismissing the cause.

GANTT, C. J., BURGESS, J., concur. ROBINSON and BRACE, JJ., concur in all except the fourth and ninth paragraphs. WILLIAMS and MARSHALL, JJ., not sitting.