## STERLING SILVER MANUFACTURING COMPANY, Appellant, v. R. D. WORRELL, Respondent.

St. Louis Court of Appeals. Argued and Submitted February 3, 1913. Opinion Filed March 1, 1913.

1. **SALES: Rescission: Unreasonable Delay.** In a case in which the right of a vendee of goods to rescind the sale is in question, where it appears that the circumstances of the delay before an attempt to rescind was made are of such a character that no two reasonable minds could arrive at any other conclusion than that it was an unreasonable delay, it is the duty of the court to declare that the delay was unreasonable as a matter of law and to peremptorily direct a finding that the sale could not be rescinded.

2. ——— : ——— : ———. Where a buyer of silverware did not attempt to rescind the sale on the ground the goods did not come up to the sample until nearly six weeks after they were received, and did not return them to the seller in like condition as when received, the delay was unreasonable as a matter of law, and hence the seller was entitled to recover the purchase price of the goods.

3. **APPELLATE PRACTICE: Disposition of Case: Ordering Entry of Judgment for Plaintiff: Sales: Rescission.** In an action for the purchase price of goods sold, defended on the theory that the vendee had rescinded, where it appeared that the vendee failed to put the vendor *in statu quo* and delayed attempting to rescind for such an unreasonable length of time that the court should have directed a finding that he was not entitled to rescind, as a matter of law, a judgment for defendant will be reversed by the appellate court and the cause will be remanded with directions to enter judgment for plaintiff.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett, Judge.*

REVERSED AND REMANDED (*with directions*).

*Fry & Rodgers* for appellants.

(1) The trial court erred in refusing to instruct the jury that the defendant retained possession of the goods an unreasonable time after receiving them and before returning them to the appellants, and the court should have so instructed the jury. Rubber Co. v. Rubber Co., 74 Mo. App. 266; Bransen v. Tanner, 77 Mo. 489; Parker v. Marquis, 64 Mo. 38; Hart v. Handlin, 43 Mo. 171; Johnson v. Mfg. Co., 20 Mo. App. 100; Tower v. Panly, 51 Mo. App. 75; Manley y. Novelty Co., 103 Mo. App. 140.

*F. R. Jesse* for respondent.

(1) Defendant had the right to return the goods on discovery of their defective quality and refuse to pay for them. Bronson v. Turner, 77 Mo. 489; Werner v. O'Brien, 40 Mo. App. 483; Viertel v. Smith, 55 Mo.

App. 617; Heating Co. v. Gas Fixture Co., 66 Mo. App. 148. (2) Plaintiffs agreed that defendant might return the goods if they were not as represented, which he did within a reasonable time after they were received, and immediately after their defective quality was discovered, and what is a reasonable time is ordinarily a question for the jury. Tower v. Pauly, 51 Mo. App. 75; Viertel v. Smith, 55 Mo. App. 617. (3) In an action for the purchase price of property sold to defendant under an express or implied warranty, defendant may set off his damages sustained by reason of plaintiffs' breach of such warranty. Nelson v. Johnson, 25 Mo. 430; Voss v. McGuire, 18 Mo. App. 477; Brown v. Weldon, 27 Mo. App. 251; Triplet v. Montgomery, 81 Mo. App. 141.

REYNOLDS, P. J.—Plaintiffs, a partnership doing business under the firm name of Sterling Silver Manufacturing Company, brought this action to recover the contract price of $128.62 for various articles of silverware sold and delivered to defendant, the payment for which it is averred, was refused. Plaintiffs' place of business is at the city of Providence, in the State of Rhode Island. Defendant carries on the business of a jeweler and dealer in silverware at the city of Mexico, this State. The contract of sale was made on March 4, 1910, the goods to be shipped May 1st of that year, defendant desiring them for his June trade. They were shipped by express to defendant from Providence, on the 28th of April, 1910, and reached Mexico in due course a few days thereafter. A few days before June 14th, defendant shipped all of them back to plaintiffs, with the exception of a cream ladle, two bread knives and one "pie server," the testimony of plaintiffs being to the effect that when the goods arrived at Providence the handles of four ladles had been bent and the handles were loose on a three-piece carving set; otherwise they were in good order, except

tarnished from standing. When originally shipped to defendant a part of the goods were in eighty-five cardboard boxes, the remaining goods being in rolls or wrapped in tissue paper, and with the eighty-five "inside boxes" were placed in what are designated "outside boxes." There were about three hundred and twenty of these pieces in these outside boxes but not in the inside boxes. The whole shipment was inclosed in two shipping cases. None of these inside boxes were marked. The outside boxes were marked in lead pencil. When the goods were returned by defendant they were twenty-one outside boxes short; all of the outside boxes had been marked in ink with the selling numbers of defendant; every box returned had been marked. No letter or communication of any kind was sent by defendant to plaintiffs concerning this reshipment, and the first knowledge plaintiffs had of it was from the express company at Providence, about June 14th, that these two packages had arrived addressed to plaintiffs. On the 14th of June, 1910, plaintiffs wrote defendant that they had just been advised by the express company that he had sent them the two packages and that as they had not received any communication from him, asked him to let them know at once his instructions in regard to these packages. They further wrote in this letter, that their representative had taken an order from defendant sometime before for these goods, which plaintiffs had shipped to defendant on the 28th of April, in fact two months before, and the letter proceeds: "If you have returned these goods now, we cannot see any reason for such an action. Kindly let us know in regard to this by return mail, as otherwise we shall instruct the express company to hold these goods subject to your further orders." Receiving no reply to this, on July 5th plaintiffs again wrote defendant referring to their letter of June 14th and saying that they herewith again ask defendant to let them know what he wishes plaintiffs

to do in regard to these packages. They further notified defendant that the account was now due and unless they received a remittance in settlement of it they would be obliged to place the claim for collection. Receiving no reply to this letter of July 5th, plaintiffs again wrote to defendant on the 2d of August, inclosing a statement of the account and saying that they trusted defendant would favor them by return mail with his check for $128.62. The letter further states that not having any reply to their letters of June 14th and July 5th, plaintiffs again ask defendant for instructions in regard to what he wishes them to do with the goods he had sent them in June after having had the same in his possession about six weeks. Plaintiffs further wrote in this letter that as the order was placed and a duplicate of it given by their salesman to defendant, which was retained by him at the time, plaintiffs are at a loss to understand his action. "The more so as we expected at least the courtesy to receive a reply to either of our two letters of June 14th and July 5th." They further advised defendant that in checking off the goods he had sent back they found that he had returned all except two bread knives, a pie server and a cream ladle, and that most of the boxes had been marked by defendant in ink, with numbers and selling marks. They further notified defendant in this letter that the contents of the two packages were still at his disposal and unless they heard from him by return mail what he wished them to do with these goods, they would be compelled to return the two packages to him by express and put their claim in course of collection.

On the 5th of August defendant wrote plaintiffs, in substance, as follows: That he did not feel that a house that would send out the class of goods that plaintiffs had sent him was entitled to receive a reply to their letters; that the goods were not opened until about a month after their receipt; that the articles re-

ferred to in plaintiffs' letter of August 2d to him, were
sold before his attention had been called to the fact
that the goods were too flimsy for use. ''There is act-
ually no temper in them at all.'' It is further stated
in this letter of defendant that when he bought the
goods it was upon the representation that they were
made right, and that no jeweler ''with any reputation
could afford to sell the goods you sent us;'' that he
was willing to pay for the goods he had sold, less ex-
press charges, and he inclosed eighty-three cents in a
money order as the amount due plaintiffs. On August
15th plaintiffs returned these eighty-three cents, re-
fusing to receive it as covering the amount due them,
reiterating that the goods were according to sample
and that as defendant had accepted them, had marked
them with cost prices on nearly every box, and had re-
tained them for some time, as he himself had admitted,
plaintiffs saw no reason why they should accept the
goods back for credit, or credit him with them, and in-
sisted upon defendant paying the amount in full. The
letter further stated that plaintiffs were holding the
goods subject to defendant's order and would forward
them by express as he might direct, unless defendant
gave them different instructions on or before August
26th. No reply was made to this letter and the ac-
count was not paid.

In the answer which defendant interposed, after a
general denial, it is set up that a representative of
plaintiffs had come to the defendant's store, exhibited
a line of samples of sterling silver goods and solicited
defendant to give him an order for a bill of goods and
silverware; that plaintiffs' agent represented the goods
would be of the same quality and workmanship as the
sample he exhibited and would be first class in every
particular and if they were not entirely satisfactory,
defendant, on the discovery of that fact, was to return
the goods to plaintiffs; that relying on these repre-
sentations defendant ordered the bill of goods on the

distinct understanding and agreement that they were to be returned to plaintiff if they were not satisfactory; that the goods were shipped to him about the 1st of May, and soon after they were unpacked defendant's attention was called to the quality of the goods and he discovered that they were not first-class and were not properly tempered, were not tempered at all and would easily bend and were too soft to be used for the purposes for which they were intended; were not satisfactory and were not of the quality of the samples of the goods shown defendant by plaintiffs' agent; that defendant, "before any of the said goods were put in his showcases returned all of said goods" to plaintiffs, with the exception of a cream ladle, of the value of sixty-three cents, two bread knives, of the value of $1.50 each, "which three articles had been sold to persons unknown to defendant, by his servants and employees before the attention of the defendant had been called to the defective quality of said goods, but that the defendant paid to the said Sterling Silver Manufacturing Company $3.63, which was the cost of the said three articles he was unable to return to said company, said payment being made by defendant paying $2.80 express on said goods for said company and eighty-three cents in cash." For further answer defendant pleaded a counterclaim. As no evidence was given under this and it was taken from the jury in an instruction given by the court, it is not necessary to set this out.

Plaintiffs introduced evidence to the effect that the goods were of the kind contracted for and also introduced the correspondence to which we have referred, the whole matter, apart from the original sale by plaintiffs' agent, and as to which there is no dispute, being contained in these letters. On his part defendant introduced testimony tending to show that the articles received were not of the kind represented when he made the purchase or gave the order.

At the close of the testimony plaintiffs asked the court to give to the jury nine instructions, many of which were refused as asked and after being changed by the court were given. The others were entirely refused. The principal change made by the court in the instructions asked by plaintiffs was in striking out that part of the instructions which held that it was the duty of defendant, when he received the goods, to act promptly in making an examination and to give prompt notice to plaintiff that they were not up to sample, if he found that was so, and that it was his duty, on receipt of the goods "immediately" to inspect them and give "immediate notice" of the defects claimed to the seller, and if the jury found he had not done this plaintiffs were entitled to recover. The court, substituting for the words "immediately" and "promptly," the words "within a reasonable time after the arrival of the goods at his place of business," added this to one instruction: *"In determining whether defendant examined said goods in a reasonable time, and gave notice to plaintiffs that the goods were not equal to the samples, the jury will consider the character of the goods, the location of plaintiffs and defendant and all the facts and circumstances in evidence."*

One of the instructions asked by plaintiffs and refused, is to the effect that the court instructs the jury, as a matter of law, that under the evidence defendant, "after receiving the goods at his store, did not act with that promptness and seasonableness which the law requires in notifying plaintiffs that he would not receive the goods on account of their not being as good quality as the samples shown."

An instruction marked No. 5, was also asked by plaintiffs, to this effect: That defendant admits that he did not return to plaintiffs the cream ladle and two bread knives, and that the cost price of these articles

172 Mo. App.—7

was $3.63, and the defendant remitted only the sum of eighty-three cents. "You are therefore instructed that your verdict will be for plaintiffs in this case." The court struck out from this instruction the words, "The court, therefore, instructs you that your verdict will be for the plaintiffs in this case," and added: "The court, therefore, instructs you that your verdict will be for the plaintiffs in this case, in any event for the value of the goods retained by the defendant, unless you find from the evidence defendant was justified in refusing to accept the goods as not equal in quality to samples and for that reason entitled to charge freight or express paid to plaintiffs."

In the view we take of the case, it is not necessary to set out or notice any other of the instructions which were asked, given or refused or the action of the court on them.

On consideration of all the evidence in the case we are clearly of the opinion that the court erred in refusing to direct the jury, as a matter of law, that as defendant had not acted promptly in repudiation of the contract, and notification to the plaintiffs that he had done so, and had not returned the merchandise in like condition as when received, plaintiffs were entitled to recover the amount of the bill and interest. One of the best considered cases on this matter is that of Tower v. Pauly, 51 Mo. App. 75. In that case Judge THOMPSON, citing and quoting many cases, at page 35, quotes from Cobb v. Hatfield, 46 N. Y. 533, l. c. 537, to the effect that "The law not only requires a disaffirmance of a contract at the earliest practicable moment after the discovery of the cheat, but a return of all that has been received under it, and a restoration of the other party to the condition in which he stood before the contract was made." Further quotation is made from Pierson v. Crooks, 115 N. Y. 539, l. c. 551, of this: "Indeed, it stands upon the most obvious justice and equity, that the seller should be apprised

Manufacturing Co. v. Worrell.

promptly if there is any objection, and the vendee in-
tends to reject the goods, so that he may retake pos-
session or resell the goods and save himself as far as
practicable, from loss. But the vendee has a reasona-
ble time for examination and to give notice, and what
is a reasonable time is usually a question of fact and
not of law, to be determined by the jury upon all the
circumstances, including as well the situation and lia-
bility of injury to the vendor from delay, as the con-
venience and necessities of the vendee." Following
this quotation Judge Thompson notes that some of the
earlier cases afford precedents which justify the con-
clusion that the delay in a given case could be held to
be an unreasonable delay as a matter of law. But
Judge Thompson concludes that he need not extend
precedents upon that question, for it must be conceded
that each case must rest largely upon its own facts.
Applying the facts there to the law which he had an-
nounced, Judge Thompson, speaking for all our court,
at page 87, concludes that the reasonable time allowed
the plaintiff in that case, by the rule of law already
stated, was such time as might be necessary to enable
him, acting promptly, to ascertain whether the article
furnished complied with the warranty, and that as a
matter of law, the plaintiff there, who was suing on
the breach of the warranty, had not disapproved the
sale within a reasonable time. (We here call atten-
tion to a misleading typographical error in the pub-
lished report of Tower v. Pauly. At page 87 and in the
tenth line from the top of that page, the clause reads,
"acting *properly,* to ascertain," etc. An examina-
tion of the original opinion on file shows that the word
*"properly"* is a typographical error, the word in the
original opinion being *"promptly,"* a word of very dif-
ferent meaning.) In a concurring opinion Judge Rom-
bauer, at page 91, states that he concurs in reversing
the judgment "on the ground that on the evidence the
court should have declared, as a matter of law, that

plaintiff did not exercise his right of rescission within a reasonable time.'' The decision of our court in Tower v. Pauly, supra, and the rule there announced, that as to what is a reasonable time is generally a question for the jury, is there, as in many other cases, stated to be subject to the exception that where the time is so long and the delay in offering to rescind so entirely without excuse or fair explanation, the courts will, as a matter of law, declare the same unreasonable. See also Viertel v. Smith, 55 Mo. App. 617, l. c. 620, a decision by the Kansas City Court of Appeals. Our own court, in Metropolitan Rubber Co. v. Monarch Rubber Co., 74 Mo. App. 266, the opinion by Judge Bond, adheres to the same rule, Judge Bond, at page 272, saying: ''It is clear to us that no fair-minded men could differ in their judgment as to the nature of the delay on the part of the defendant in inspecting the goods and notifying plaintiff thereof as the ground of its attempted rescission, and that for this reason the court should have instructed the jury that plaintiff was entitled to recover on its cause of action.''

We are referred to the case of Althoff v. St. Louis Transit Co., 204 Mo. 166, 102 S. W. 642, as overruling all of these cases. In that case, at page 171, Judge Fox says: ''The court cannot declare as a matter of law, in any given case, what would be a reasonable time within which to make the tender. That is a question of fact for the jury to determine according to the facts and circumstances of each case, under the guidance of proper instructions to be given by the court.'' We do not understand that this expression of Judge Fox is any different from the observances made by Judge Thompson, Judge Rombauer and Judge Bond in the cases above referred to; that is to say, Judge Fox is stating the general rule; its application, however, is to be determined by the particular facts in each case. When in a given case the circumstances of the delay are of such a character that no two reasonable minds

can come to a different conclusion on it or arrive at any conclusion other than that it is an unreasonable delay, it is for the court to declare, as a matter of law, that the delay was unreasonable. It is then not only within the power, but it is the duty of the trial court to instruct the jury to that effect. So we have held in the case of Long v. Vending Machine Co., 158 Mo. App. 662, 139 S. W. 819, and very recently in Emery v. Boehmer Shoe Co., 167 Mo. App. 703, 151 S. W. 174. See, also, Williams v. Powell, 101 Mass. 467, 1. c. 469. We therefore hold that it was error for the court not to have given the instruction to the effect that the delay in this case was so unreasonable as to deprive defendant of his excuse; that the failure to examine the goods, notify the seller of his complaint and return the goods to him promptly and within due time debarred defendant of his defense. That defendant did none of these things within due time or within a reasonable time under the facts in this particular case, is too clear for any difference of opinion among reasonable men, and so the court should have said as a matter of law. It is true in the case at bar, and in this it differs from the Emery case, that defendant did not stand on a general denial in his answer but set up his defense as to reasons for his refusing to retain the goods and returning them to plaintiffs. However valid that defense may be, defendant is precluded from making it here and in this action by his unreasonable delay. This conclusion we have arrived at renders it unnecessary to notice the other instructions.

The judgment of the circuit court must be reversed. It is so ordered, and the cause remanded with directions to that court to enter up judgment for plaintiffs for the amount of the account and, ascertaining the amount of interest due on it from the date of the filing of the action, at the rate of six per cent per annum, add that to the principal sum. *Nortoni* and *Allen, JJ.*, concur.