# H. C. MARTH, Appellant, v. ED. A. WISKERCHEN, Respondent.

### St. Louis Court of Appeals, January 5, 1915.

1. **JUSTICES' COURTS: Pleading.** No formality in pleading is required in suits instituted in justices' courts, and much liberality is to be indulged respecting the right of recovery under the pleadings.

2. **———: ———: Suit on Written Instrument.** Where a suit instituted in a justice's court is based upon a written instrument, such instrument must, under Sec. 7412, R. S. 1909, be filed.

3. **CONTRACTS: Written Instruments: Effect of Alteration.** The statement of a cause of action, in a suit filed in a justice's court, alleged that defendant purchased of plaintiff a certain engine described and for a sum mentioned in a certain "contract," which was set out; that plaintiff caused the engine to be delivered to defendant at a certain place, and that defendant, after inspecting the engine, received and accepted it, but refused to pay plaintiff therefor, although plaintiff had performed his part of said contract of sale. The so-called "contract" was a mere memorandum, signed by defendant, evidencing the contract of sale which the parties had orally entered into, and was not filed with the statement, as required by Sec. 7412, R. S. 1909, when a suit is based upon a written instrument. *Held*, that the action was not based on the memorandum, and that the memorandum was pleaded merely as matter of inducement, and hence a defense that the memorandum had been altered was not tenable, in the absence of a showing that the alteration was made with fraudulent intent, since the alteration of a written instrument will not prevent a recovery for the original indebtedness evidenced by it or growing out of it, where the alteration was made without fraudulent intent.

4. **SALES: Rescission: Necessity of Prompt Action.** A buyer who desires to rescind a contract of sale on the ground that the thing sold does not comply with the terms thereof must, immediately upon discovering such fact, disaffirm, notify the seller of such disaffirmance, and tender back the thing sold; but "immediately" does not mean *instanter*, but means a reasonable time, under the circumstances.

5. **PRINCIPAL AND AGENT: Authority of Agent: Sufficiency of Evidence.** In an action for the purchase price of a chattel,

defended on the theory that defendant had rescinded the sale
because of a breach of warranty and had delivered the chattel
to plaintiff's agent and directed him to notify plaintiff of the
rescission, evidence *held* insufficient to prove that such person
was plaintiff's agent.

6. **APPELLATE PRACTICE: Binding Effect of Theory at Trial.**
In an action for the purchase price of a chattel, where the
case was tried in the trial court on the theory that it belonged
to plaintiff, defendant would not be heard to contend, on ap-
peal, that it belonged to another.

7. **SALES: Rescission: Necessity of Prompt Action: Sufficiency
of Evidence.** In an action for the purchase price of a chattel,
defendant set up, by way of defense, that he had rescinded
the sale because of a breach of warranty and had delivered the
chattel to plaintiff's agent and directed him to notify plaintiff
of the rescission. The evidence was insufficient to establish
that such person was plaintiff's agent, but did show that plain-
tiff himself could have been reached by defendant with
notice of the rescission during the day on which the alleged
rescission was made and the day following. Plaintiff did not
receive notice of the alleged rescission for about two months.
*Held*, that the defense was untenable, for the reason that
defendant did not promptly notify plaintiff of the rescission or
tender back the chattel.

8. **JUSTICES' COURTS: Sales: Counterclaims.** In an action
instituted in a justice's court for the purchase price of a chattel,
defendant cannot recover for breach of warranty unless he
files a counterclaim therefor prior to the trial before the
justice.

Appeal from Lewis Circuit Court.—*Hon. Chas. D.
Stewart*, Judge.

REVERSED AND REMANDED (*with directions*).

*R. J. McNally, Hilbert & Henderson* and *A. F.
Haney* for appellant.

(1) The trial court erred in sustaining defend-
ant's objection to the question put to plaintiff, on di-
rect examination, as to whether he was acquainted with
the price of new engines, such as this engine, at Ewing,
Missouri, in 1910. This being sold as a secondhand

engine, the jury had a right to compare the price at which it was sold to defendant with the price of a new engine of the same kind, in passing upon the understood character and standard of perfection of this engine and the question whether it reasonably complied with the warranty. (2) The court erred in giving instruction number 2 on the part of defendant. This instruction authorizes the jury to find that defendant returned the engine "to the plaintiff or his authorized agent," and directs the jury to find a verdict on such finding. This instruction is highly improper and prejudicial, for the reason that there is no evidence that plaintiff had given any authority to anyone, either directly or indirectly, to represent him as his agent in the matter of receiving back the engine from defendant. The giving of an instruction when there is no evidence upon which to base it is reversible error. Evans v. Graden, 125 Mo. 72; Groneweg v. Estes, 144 Mo. App. 418; Franz v. Hilterbrand, 45 Mo. 121; Bowles v. Lewis, 58 Mo. App. 649; Nelson Mfg. Co. v. Shreve, 94 Mo. App. 518. (3) Instruction number 4 given on the part of defendant is erroneous, because there is no evidence on which to base it. See authorities cited under preceding point. Said instruction is unsupported by the evidence because (first) there is no evidence that plaintiff was absent so that defendant could not deliver the engine to him when he returned it to Ewing; (second) there is no evidence that defendant caused notice of such return to be given to plaintiff as soon as practicable. If the engine did not comply with the warranty embodied in the written contract of sale—that is, if it was not in running order and in good shape when delivered to defendant—then it was the duty of defendant, upon discovering any failure in said warranty, if he desired to take advantage of it for the purpose of rescinding the contract of sale, to promptly return said engine to plaintiff and promptly notify him of his intention to rescind the con-

tract on account of the breach of said warranty. The failure to return the engine to and to notify plaintiff until after a delay of about two months after the alleged discovery of the defect is, as a matter of law, an unreasonable delay, the evidence showing no valid excuse therefor; and the defendant will not be permitted to set up such attempted return and rescission as a defense to the action for the purchase price of the engine. Steam Heating Co. v. Gas Fixture Co., 60 Mo. App. 148; Johnson v. Whitman Agricultural Co., 30 Mo. App. 100; Metropolitan Rubber Co. v. Monarch Rubber Co., 74 Mo. App. 266; Tower v. Pauly, 51 Mo. App. 75; Emery v. Boehmer Shoe Co., 151 S. W. 174; Sterling Silver Mfg. Co. v. Worrell, 154 S. W. 866.

*Noel, Rouse* and *McKee* for respondent.

ALLEN, J.—This is an action to recover the purchase price of a traction engine alleged to have been sold and delivered by plaintiff to defendant. The cause originated before a justice of the peace, and found its way to the circuit court, where, upon a trial before the court and a jury, there was a verdict and judgment for defendant, and the plaintiff appealed.

On or about November 15, 1910, plaintiff, who was a general agent for the Advance Threshing Company, and who was then at Ewing, Missouri, sold the engine in question to defendant for the sum of $150. It appears that a traveling salesman for another company learned that defendant wanted to purchase a second-hand engine, and that plaintiff had one, and brought the parties together. Plaintiff and defendant met the following day in the implement and harness store of one Henry Lesch, who was a local agent of the Advance Threshing Company, having been so appointed by plaintiff. After some discussion the parties agreed upon a sale of the engine to defendant for $150, delivered at Ewing. Defendant thereupon signed a paper,

which (as it appears in the statement filed with the justice of the peace) is as follows:

"Ewing, Mo., 11/15/1910.

"This is to certify that the undersigned agrees to purchase and pay to H. C. Marth the sum of $150 in cash for the 12 H. P. Aultman & Taylor engine at Steffenville, delivered at Ewing, Mo., in running order and in good shape.

Ed. A. Wiskerchen."

It appears that the engine was then in fact at or near Steffenville, but that plaintiff had previously arranged to have it taken to Knox City and did not know whether the parties who had agreed to move it had done so or not. It was brought to Ewing on the following Sunday, and delivered to the defendant. On Monday and Tuesday defendant and one Miles Walker and the latter's son, Russell Walker, both engineers, tested it, running it about the streets. It seems that the engine stood the test well, but that defendant insisted that plaintiff "guarantee" the boiler and crown sheet thereof for one year. Plaintiff thereupon executed a writing to this effect, and defendant gave plaintiff his check for $150. Defendant and Russell Walker then (Tuesday afternoon) started to run the engine out to defendant's home, some four miles from Ewing. It seems that they had proceeded but a short distance when the engine gave trouble and they returned with it and put it on "the right of way" behind Lesch's store, and defendant told Lesch to notify plaintiff that he would not take it. And defendant thereupon stopped payment upon the check which he had given to plaintiff.

Plaintiff was in Ewing when defendant accepted the engine and left with it; and the only evidence in the record touching his departure therefrom is the testimony of Lesch, who says: "Next morning (Wednesday) I had to go out in the country and Mr. Marth (plaintiff) went to Illinois." It further appears from

Lesch's testimony that he did not notify plaintiff of the return of the engine until some time in the following January, when he wrote plaintiff in regard to another matter. And plaintiff testified that he did not learn thereof until some time in January, 1911, when he returned to Ewing; that he then found that the crown sheet was cracked, and had it repaired, and on January 26, 1911, wrote defendant a letter, which was introduced in evidence, demanding a compliance with the terms of the sale. It appears that the local bank wrote plaintiff at the home office of the latter's company in regard to the dishonoring of defendant's check, and plaintiff testified that he did not know of it at the time, and did not learn that payment had been stopped on the check for "a good while afterwards."

There is much in the record touching the condition of the engine, and particularly the crown sheet, which need not be here detailed. Nearly all of it tends to show that the engine was in reasonably good order, and the crown sheet not cracked, when delivered to defendant. Miles Walker, defendant's engineer, testified that it was "in good running order" and "in good shape" when delivered. Russell Walker, the engineer who, with defendant, started with the engine from Ewing, testified that he let cold water into the hot boiler after stopping to clean out the injector, which in his opinion caused the crown sheet to crack; and that no leak had theretofore been observed therein.

I. One of the defenses below was that the memorandum of the sale signed by defendant had been altered after the execution thereof, by erasing the words "Knox City" and inserting "Steffenville" in lieu thereof. Defendant denied under oath that he executed the instrument set out in the statement filed; and he and two other witnesses testified that, as executed, the writing contained "Knox City" instead of "Steffenville." Plaintiff testified that the instrument

had not been in anywise altered; but that both Knox City and Steffenville were mentioned when the writing was prepared.

The court, in instructing the jury, pursued the theory that an alteration of the instrument, in the manner indicated above, by plaintiff or someone acting for him, without defendant's knowledge or consent, would render the same void and prevent a recovery by plaintiff. As to this it may be said that a strict rule has obtained in this State respecting the unauthorized alteration of an instrument by the holder, (now modified as to instruments within the Negotiable Instruments Law). It is unnecessary to here review the many cases on the subject, but see Harvesting Co. v. Blair, 146 Mo. App. l. c. 382, et seq., 124 S. W. 49, and cases cited and discussed; Kelly v. Thuey, 143 Mo. 422, 45 S. W. 300; Koons v. St. Louis Car Co., 203 Mo. l. c. 256-259, 101 S. W. 49; Mercantile Co. v. Tate, 156 Mo. App. l. c. 242, 137 S. W. 619. It is certain that the alteration here claimed to have been made was not a material alteration, for it did not change the legal effect of the instrument in the slightest degree. Plaintiff testified, and it is wholly uncontradicted, that he owned but the one twelve horse-power Aultman & Taylor engine. And there is absolutely nothing to indicate that the alteration, if any, was made with fraudulent intent. But whether it must be held, under our law, that the instrument, if so altered, was rendered void, we need not decide. This is for the reason that we think that the action is not to be regarded as a suit on the instrument itself, and that plaintiff is here not to be denied a recovery on this ground.

In Harvesting Company v. Blair, 146 Mo. App. 374, 124 S. W. 49, this court in an opinion by NORTONI, J., held that though a note had been altered, so as to prevent a recovery thereon, nevertheless, where the note had not been given in extinguishment of the debt which it evidenced, and the alteration was without

fraudulent intent, an action could be maintained upon the original indebtedness. This rule we regard as altogether sound, and it appears to find application to the facts of the case before us.

As the suit originated before a justice of the peace, no formality in pleading is required, and much liberality is to be indulged respecting the right of recovery under the pleadings. [See Herrick v. Maness, 142 Mo. App. 399, 127 S. W. 394; Cornett v. Woolridge, 152 Mo. App. 466, 133 S. W. 345; Barr & Martin v. Johnson, 170 Mo. App. 394, 155 S. W. 459.] The statement of the cause of action alleges that "defendant purchased of plaintiff a certain engine, described and for the sum mentioned, in the following contract:" (Setting out the paper signed by defendant); that plaintiff caused the engine to be delivered to defendant at Ewing, "in running order and in good shape, as a secondhand engine;" that defendant, after inspecting the engine, received and accepted it, but refused to pay plaintiff therefor, although plaintiff had performed "his part of the said contract of sale."

It nowhere appears that the instrument itself was filed, as the statute requires if the suit is based upon it (See Sec. 7412, R. S. 1909); and the writing was not a formal contract between the parties, but a mere memorandum signed by one of them, evidencing the contract of sale which they had orally entered into. Nor does it appear that it was intended to base the suit on the instrument, as such, though it is set out; but that it was sought to set up briefly the facts attending the transaction, as affording a basis for the recovery of the purchase price of the engine alleged to have been sold and delivered to defendant and received and accepted by him.

In this view, plaintiff is not here to be denied a recovery for such an alteration, if any, in the paper in question, since there is no evidence of any fraudulent intent whatsoever. And we therefore hold that

the evidence adduced on this score constituted no de-
fense to the action. [Harvesting Co. v. Blair, supra.]

II. Defendant, if he desired to rescind the con-
tract upon the ground that the engine did not comply
with the terms thereof, was obliged to promptly dis-
affirm, notify plaintiff of such disaffirmance and ten-
der back the property. Under such circumstances, a
vendee is required to act with much promptness, if he
intends to reject the thing sold. Indeed it is said that
he must rescind immediately, upon discovering that
the property is not as warranted or represented,
though "immediately" does not mean *instanter*, but
within a reasonable time for disaffirmance, under the
circumstances. [See Long v. Vending Machine Co.,
158 Mo. App. 662, 139 S. W. 819, and authorities cited.]
The cases agree that the purchaser may not take time
to deliberate, but must promptly notify the seller, and
restore or tender back the subject-matter of the sale.
[See Sterling Silver Manufacturing Company v. Wor-
rell, 172 Mo. App. 90, 154 S. W. 866, and cases there
cited.]

In the case before us, while it is true that the
defendant brought the engine back to Ewing, he did not,
according to the evidence adduced by both parties, no-
tify the plaintiff of his attempted rejection thereof, or
make any effort to do so, but merely caused the engine
to be placed upon "the right of way" behind Lesch's
store, telling Lesch to notify the plaintiff. The court
evidently proceeded upon the theory that there was
evidence from which the jury might find that Lesch
was plaintiff's agent to accept a tender of the engine
from the defendant; but the record is barren of any-
thing to sustain this view. Plaintiff repeatedly testi-
fied that Lesch had no authority whatsoever to rep-
resent him; and neither does Lesch nor any other wit-
ness testify to the contrary. It is clear that no vestige
of authority was shown on the part of Lesch to bind

plaintiff by receiving the engine from defendant when the latter attempted to rescind the contract.

The argument is advanced here that the engine was really sold by plaintiff's company, of which Lesch was an agent, and that hence delivery to Lesch sufficed. But not only was there positive testimony that the engine was plaintiff's individual property, but it was sold to defendant by plaintiff individually, and the case below was tried throughout upon the theory that the sale was a personal transaction between plaintiff and defendant. This argument therefore is without force.

The court further instructed the jury to the effect that defendant would be excused from returning or offering to return the engine within a reasonable time if the same was due to plaintiff's absence, and if such notice was given to plaintiff as soon as practicable. This likewise is wholly unsupported by the evidence. The evidence is that plaintiff was in Ewing on the day in question, and it is to be inferred that he was there when defendant returned the engine. From the testimony of Lesch, above mentioned, it seems that plaintiff did not leave Ewing until the following day. Nor is there anything to show that he could not have been thereafter reached within a reasonable time by the exercise of any diligence. But it does not appear that defendant made any effort to reach plaintiff, but merely told Lesch to notify him, and proceeded to stop payment on the check. By merely placing the engine on the "right of way," and asking Lesch to notify plaintiff, defendant thereby made Lesch his own agent for conveying such notice to plaintiff, which, according to the evidence, did not reach plaintiff until some time in the following January.

Under such circumstances, it was no defense that the engine did not comply with the terms of the contract of sale, if such were the case.

It is apparent that the evidence disclosed no valid defense to plaintiff's claim. The contract of sale is

conceded, and nothing is shown in evidence to defeat plaintiff's right to recover the sale price. And if there was any liability on account of plaintiff's warranty in the premises, no counterclaim therefor was filed prior to the trial before the justice of the peace.

The judgment will therefore be reversed and the cause remanded with directions to the trial court to enter judgment for plaintiff for $150, with six per cent interest thereon from the institution of the suit. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.