BARNES-SMITH MERCANTILE COMPANY, Respondent, v. N. W. TATE et al., Appellants.

Kansas City Court of Appeals, May 15, 1911.

1. **SALES: Quality of Goods: Jury Question.** In an action to recover the purchase price of merchandise sold and delivered, *held*, that the trial judge erred in not submitting to the jury the issue of whether or not the goods delivered by plaintiff, and shipped back by defendants, were of the character and quality described in the contract of sale.

2. **CONTRACTS: Memorandum Distinguished from Alteration: Effect.** In a written contract of sale of an assortment of jewelry, the body of the agreement contained the words, "One case or cabinet free." The plaintiff's salesman appended a memorandum under the head "Remarks," containing the words "Floor case." The position of this notation, showed that it was not any part of the contract, nor intended as anything but a mere agent's memorandum concerning a fact not covered by the contract. *Held*, that such a notation could not be considered as an alteration of the contract, and hence, that the contract was not thereby invalidated in any way.

3. **EVIDENCE: Written Contract Incomplete on Face: Supplementary Oral Agreement Admissible.** Where the evidence of the defendants tended to show that a counter show case was to be furnished with an assortment of jewelry for which plaintiff sued to recover the purchase price, and where the words in the body of the agreement, "One case or cabinet free," were supplemented by no description of the show case, *held*, that the rule that all antecedent or contemporaneous oral agreements are merged in the written contract does not apply where the instrument shows on its face that it does not cover the

entire transaction. Hence, evidence of the oral agreement as to whether a counter or floor case was to be furnished, was admissible, which evidence raised an issue of fact for the jury.

4. **CONTRACTS: Performance or Non-Performance: False Representations.** Where there is no evidence that the samples shown defendants did not correspond to the articles described in the contract, and defendant's own expert witnesses do not say that defendants would not have received a fair and reasonable consideration for their money had the goods delivered fulfilled the contract descriptions, the case is narrowed to the single issue of whether or not plaintiff complied with the contract, and defendant's argument that the contract was procured by false and fraudulent representations is without merit.

Appeal from Callaway Circuit Court.—*Hon. N. D. Thurmond,* Judge.

REVERSED AND REMANDED.

*Chas. M. Hay* and *E. Rosenberger & Son* for appellants.

*James F. Ball* and *Claude R. Ball* for respondent.

JOHNSON, J.—Plaintiff, a corporation engaged in the jewelry business in St. Louis, sued defendants, merchants doing business in Williamsburg, Callaway county, to recover the purchase price of merchandise sold and delivered. Defendants refused to receive the merchandise, shipped it back and notified plaintiff of their purpose to rescind the sale on the grounds that it was induced by false and fraudulent representations of plaintiff's salesman; that plaintiff altered the written contract of sale after its execution by defendants and without their consent, and that the articles of merchandise delivered were not of the quality and value described in the contract of sale. Plaintiff refused to take back the goods and brought this suit for the purchase price. The cause was tried to a jury and in obedience to a peremptory instruction given at the close of the evidence, the jury returned a verdict for plaintiff for the

full amount of the purchase price.    Defendants appealed.

Defendant, N. W. Tate, was the owner of a general store at Williamsburg, but was doing business under the firm name of Tate & Sons.  His three sons, E. Marvin, Claude and Loyd assisted him in the business and were held out to the world as his partners.  The first named son was the buyer and, as such, made the purchase and signed the firm name to the written contract in question. In doing this, he acted within the real as well as the apparent scope of the authority his father had conferred on him, and, though his father mildly objected to the purchase in the presence of plaintiff's traveling salesman, there was nothing in what was said to suggest that the young man was exceeding his authority and we hold that defendants cannot escape liability on the ground, presented with other defenses, that the signature of the partnership name was without authority.

It appears that plaintiff, to facilitate the sale of its wares by relieving country merchants of the task of selecting stocks of salable jewelry, made up small stocks at its store and, providing its traveling agents with a sample stock, sent them out to make sales on commission.  One of these stocks, consisting of an assortment of collar and cuff buttons, scarf pins, charms, lockets, chains, brooches, rings, combs, and leather purses, was priced at $296.  Plaintiff called this stock its "$296.00 Department" and provided its agents with printed forms of a contract of sale which contained an itemized description of the goods, together with prices and terms of sale.  On September 11, 1908, a traveling salesman of plaintiff came to defendants' store, exhibited his samples of the "$296. Department" to the buyer, effected a sale, and procured the signature of the firm to a contract made out on one of the printed forms.  The contract begins as follows: "All goods F. O. B. St. Louis (original) Form 4. Barnes-Smith Mercantile Co., Sixth and Locust Streets, St. Louis, Mo.

Purchaser will please read this order carefully to avoid any misunderstanding.

Leather Goods and Combs are not subject to exchange. List of goods and terms of our $296 Department.

Positively no goods on commission."

Then follows a long list of articles. As examples of the manner in which the articles are described we quote a few of the headings and items:

"Collar Buttons.

| | | |
|---|---|---|
| 1 dozen fine gold plates. ...........$ | 0.25 | $ 0.25 |
| 1 dozen roll plate. ................. | .40 | .40 |
| 1 dozen rolled gold plate ........... | .90 | .90 |

\* \* \*

Links.

| | | |
|---|---|---|
| ½ dozen pearl. ...................$ | 1.25 | .82½ |
| ½ dozen gold plated................ | 3.00 | 1.50 |
| ½ dozen solid gold fronts, hand engraved ....................... | 24.00 | 12.00" |

At the end of the items were the words in brackets: "One case or cabinet free." Then came the terms of sale, i. e.:

"Warranty.—The Barnes Mercantile Company will replace free of charge, any jewelry not wearing satisfactorily any time within five years from date of invoice.

Exchange privilege.—Any jewelry in this department may be exchanged for different styles of patterns any time within one year from date of invoice.

Sales Guaranteed.

To merchants ordering out $296.00 department of merchandise, who make use of our Trade Check plan as above set forth, *We guarantee the sale of the goods* in this department to equal the purchase price within one year from date of first payment, and we agree to buy back at purchase price all unsold goods, provided sales have not equaled said purchase price.

In consideration of this guarantee, purchaser agrees to keep merchandise purchased of the Barnes-Smith Mercantile Co. displayed in proper manner, and also agrees to meet all obligations promptly and comply with all requirements and conditions as set forth herein, and also agrees to make a report to the Barnes-Smith Mercantile Co. every sixty days, giving an itemized list of all goods on hand.

*Terms of Settlement.*—All long time accounts must be closed by acceptances. This order is payable in five equal payments, due in two, four, six, eight and ten months from date of invoice, provided customer sends us his five acceptances, payable to our order within fifteen (15) days from date of invoice. If acceptances are not sent as required, terms cash subject to 6 per cent discount, in fifteen days.

*Important.*— It is hereby agreed and understood that all agreements of both parties to this transaction are stated herein; that no change of terms or conditions will bind either party unless endorsed in writing on the original order."

The contract closes with the customers' order as follows: "Date Sept. 11, 1908. Barnes-Smith Mercantile Co., St. Louis, Mo., Gentlemen:—Please ship the goods described herein, which we hereby purchase on the above terms and conditions. We have read this order carefully and find same contains all the conditions agreed upon, and we further agree not to countermand this order before receiving the goods nor after receiving them. Tate & Sons, Customer."

After the signature was the post office address of defendants, the name of the traveling salesman, the shipping directions and, at the bottom of the paper, the words, "Floor case," were written under the head of "Remarks."

The contract was executed in duplicate, the original was taken by the agent and the duplicate was delivered to defendants and retained by them. The words "Floor

case" do not appear on the duplicate and it is the contention of defendants that they were written on the original after the agent left the store. This is denied by the agent who states the words were written in the store in the presence of the buyer. The words refer to the show case which the contract required plaintiff to furnish with the stock and without extra charge. The only reference in the contract to the show case is found in the sentence following the itemized list of articles:— "One case or cabinet free." There is no description of the case and defendants contend they were to have a counter show case while the agent declares a floor case was ordered. When the goods arrived at Montgomery City the place of delivery specified, defendants found a floor case had been sent and immediately consulted a lawyer on the subject of rescinding the order. Under his advice, they had the case of jewelry examined by jewelers in Montgomery City who pronounced the goods of inferior grade, quality and value to those described in the contract. Thereupon defendants returned the shipment and notified plaintiff of their decision to rescind. A voluminous and acrimonious correspondence ensued and after the parties had reached a condition of epistolary exhaustion they entered the litigious period of the controversy.

It appears from the evidence of both parties that it requires the skill of an expert jeweler to pass on grades of jewelry especially on the cheaper grades of plated, rolled and washed goods. Indeed, the traveling agent who sold the goods insisted in his testimony that no one but an assayer could tell anything about grades. Expert witnesses introduced by defendants testified to their competency to grade and value the goods and, in substance, their testimony is to the effect that the goods delivered were not of the quality described in the contract but were so inferior that their real market value was not over one-third of that charged for the "depart-

ment." The evidence of defendants tends to show that. the traveling agent knew that defendants, who had no experience as jewelers or in the jewelry business, knew nothing about the quality and grades of such goods and could learn nothing about such subjects from an inspection of the samples. The only information they could obtain from such inspection would be as to style and appearance. They were compelled to rely on the representations of the contract and of the salesman for quality, and intrinsic value. In substance the agent represented that the goods delivered would conform to the descriptions in the contract and in market value would equal the prices charged.

These are the principal facts of the transaction and from them we conclude the learned trial judge erred in not submitting to the jury the issue of whether or not the goods delivered by plaintiff were of the character and quality described in the contract. We do not agree with defendants that the contract was invalidated in any way by the memorandum written thereon by the agent to the effect that a floor case was to be delivered. The position of that notation shows that it was not any part of the contract nor intended as anything but a mere agent's memorandum concerning a fact not covered by the contract. The rule is quite strict that "a material alteration of a written instrument by one of the parties will release the other party thereto * * even though the alteration is made in good faith to make it conform to the real agreement of the parties. The instrument is vitiated regardless of the intent of the party making it." [Koons v. Car Co., 203 Mo. 1. c. 259.] In that case one of the parties made interlineations in the body of the contract. In the present case there was no spoliation of the contract. From title to signature it remained the same as it was when defendants signed it and the notation written on the paper entirely outside the bounds of the agreement was merely a memorandum for the

guidance of the shipper and could not be considered as an alteration of the contract.

Nor do we sanction the argument of defendants that the contract was procured by false and fraudulent representations. There is no evidence that the samples shown defendants did not correspond to the articles described in the contract and defendants own expert witnesses do not say that defendants would not have received a fair and reasonable consideration for their money had the goods delivered fulfilled the contract descriptions. The case is narrowed to the single issue of whether or not plaintiff complied with the contract. If it did, defendants had no ground for a rescission of the sale and if it did not, defendants stand justified in the course they pursued and plaintiff has no cause of action for the purchase price.

The evidence of defendants tends to show that a counter show case was to be furnished. The written contract contains no description of the show case and evidence of the oral agreement relating to that article was admissible. The rule that all antecedent or contemporaneous oral agreements are merged in the written contract does not apply where that instrument shows on its face that it does not cover the entire transaction. "One case or cabinet free" means only that plaintiff was to furnish a case or cabinet of a size, quality and character orally agreed upon. The testimony of the salesman that a floor case was to be sent raised an issue of fact respecting that item of the contract. In addition to the issue of the show case there is a sharp and substantial controversy over many of the other items, among them that of gold filled buttons which defendants' expert says were not gold filled but plated, and the hand engraved jewelry which the expert says was not hand engraved. If defendants agreed to pay a higher price than the market value of the goods that would be a matter of business negligence for which they would have no one but themselves to blame. The rule of the civil law that a

sound price implies a sound article does not obtain in common law jurisdictions. *Caveat emptor* is the fundamental rule governing sales of personal property. But under that and every other rule and principle of the law of contracts a vendee is entitled to receive what he buys and is not compelled to accept something different from that specified in the contract of sale. If plaintiff agreed to furnish a counter case and sent a floor case, and if they sent plated ware for gold filled and machine engraved for hand engraved, it did not comply with its contract and defendants were under no obligation to receive and pay for the goods. The evidence presents those questions as issues of fact which the learned trial judged erred in withdrawing from the consideration of the jury.

The judgment is reversed and the cause remanded. All concur.