P. I. MURPHY, APPELLANT, v. W. W. HOLLIWAY AND OTHERS, RESPONDENTS.

Kansas City Court of Appeals. April 1, 1929.

*Edwin A. Austin* and *Lee Mullins* for appellant.

*W. C. Ellison, L. D. Ramsay, Henry B. Hunt* and *James F. Gore* for respondent.

BARNETT, C.—This is an action for the purchase price of 510 opera chairs sold and delivered to defendant by the Peabody School Furniture Company, of Topeka, Kansas. The plaintiff is the president and the assignee of that company. The evidence shows that the defendants, with the exception of William R. Erwin, are members of a committee known as the Atchison County Memorial Building Committee, an unincorporated voluntary association. The county court of Atchison county had made an appropriation under the provisions of an act of the Missouri Legislature, Laws of Mo., 1919, p. 78, for the purpose of erecting a memorial building in memory of the World War soldiers and sailors. This appropriation was not sufficient to pay for the proposed building; so the county court appointed a committee to build and equip the building and to raise money for that purpose, but gave the committee no authority to incur any indebtedness on behalf of the county. The building was constructed and equipped, largely by use of means raised by popular subscription. When the equipment of the building was under consideration, one R. C. Everett called at the town of Rockport and succeeded in getting the greater number of the committee together, at which time he took a tentative order for 427 opera chairs at the price of $3.32 each. The members of the committee present authorized defendant George Boettner to sign the order as secretary of the committee. The order was written upon an order blank placed over two duplicate blanks with carbon paper between; so that in writing the one order three copies were made. The blank form was evidently prepared primarily for taking orders from school boards. The original order was forwarded to the Peabody School Furniture Company and one of the carbon copies was left with the secretary of the committee. Several members of the committee read the order before the secretary signed it, and according to the defendants' evidence the salesman read the order in the presence of all the members of the committee who attended the meeting. However, one of defendants' witnesses said that he did not know whether all of the order was read or not. When the original order was re-

ceived by the furniture company it was in words and figures as follows:

"THE PEABODY SCHOOL FURNITURE COMPANY
OF TOPEKA, KANSAS.

Nov. 1st, 1921

"Ship by Freight on or about at once 192—. To John Stapel

"Shipping Point Rockport County, Atchison State Mo. Routing——

"P. O. Address Rockport County, Atchison State Mo. St. No.——

| "Quantity | Catalog Number | NAME AND DESCRIPTION OF ARTICLES ORDERED. | Price Each | Amount |
|-----------|----------------|-------------------------------------------|-----------|--------|
|  |  | Kind of Desks—Single, Double, Pedestal, Commercial, Chair or Movable, Finish, etc. Opera Chairs, Finish, Hat Wires, etc. |  |  |

"Approximately 427 # 242 Mahogany Finish freight paid and chairs installed according to plan with number plates furnished @ $3.32 each.

"It is further agreed that should there be a decrease in prevailing price *before next June* below the price paid in this case that said decrease is to be rebated by company.

"No interest until Jan. 1, 1922. Payable before Jan. 1, 1923, with interest at six per cent. 1.3 of amount may be carried with interest at six per cent until June, 1923, if necessary to consignee. Installation immediately if possible.

"Total Amount of Order *Approximately 1476.64*

"The PEABODY SCHOOL FURNITURE COMPANY of Topeka, Kansas, agrees to deliver the goods specified in this contract in good condition on board cars, at Factory, or as noted above, and furthermore guarantees all goods to be free from all imperfections of material and workmanship and equal to specifications, description and sample, and to render the service reasonably to be expected of such articles.

"In consideration of the above Atch. County Memorial Bldg. Committee, County of Atchison, State of Mo., agree to receive the goods specified in this order, pay all transportation charges, and remit for same to PEABODY SCHOOL FURNITURE Co., of Topeka, Kans., the sum of noted above $3.32 each Dollars ($——) in Cash or in legally executed School Warrant or Warrants bearing or including — per cent interest from date of issue and payable $——— 192—, $————192—.

"If transportation charges are included in the amount of this order, the School Officers agree to pay same and deduct from above amount, sending freight receipt as cash when making remittance. All remittances will be made direct to PEABODY SCHOOL FURNITURE

Co., of Topeka, Kans. All agreements and specifications affecting this order are enumerated on this sheet or attached hereto in writing and any verbal agreement shall not alter same.

| "Signature | Official Title | P. O. Address |
| --- | --- | --- |
| | President or Director | |
| "(Signed) Geo. W. Boettner, Sec'y. | Secretary or Clerk | |
| | Treasurer | |

"By unanimous order of Committee in executive session.
"Deposit in Citizens Bank of Rockport City, ——State, Mo.
                    "(Signed) By R. C. EVERETT, Salesman."

At the trial the defendants introduced in evidence the carbon copy which was left with the secretary, and the words which we have italicized, namely: the words "before next June" and the words "approximately 1476.64" were not on the copy. As part of the order was printed and part was written in pencil, we reproduce the printed blank which was used in taking the order.

                "THE PEABODY SCHOOL FURNITURE COMPANY
                        OF TOPAKA, KANSAS.

                                    —————————192—

"Ship by Freight on or about ——————192— To——.——
"Shipping Point ——·—— County —— State —— Routing——
"P. O. Address ———— County —— State —— St. No.—

| "Quantity | Catalog Number | NAME AND DESCRIPTION OF ARTICLES ORDERED. Kind of Desks—Single, Double, Pedestal, Commercial, Chair or Movable, Finish, etc. Opera Chairs, Finish, Hat Wires, etc. | Price Each | Amount |
| --- | --- | --- | --- | --- |

                                "Total Amount of Order——————

"The PEABODY SCHOOL FURNITURE COMPANY of Topeka, Kansas, agrees to deliver the goods specified in this contract in good condition, on board cars, at factory, or ——————, and furthermore guarantees all goods to be free from all imperfections of material and workmanship and equal to specifications, description and sample, and to render the service reasonably to be expected of such articles.

"In consideration of the above, the School Officers of District No. —, County of————, State of————, agree to receive the goods specified in this order, pay all transportation charges, and remit for same to PEABODY SCHOOL FURNITURE Co., of Topeka, Kans., the sum of—————Dollars ($———) in Cash or in legally executed School Warrant or Warrants bearing or including —per cent interest from date of issue and payable $————192—, $————192—.

"If transportation charges are included in the amount of this order, the School Officers agree to pay same and deduct from above

amount, sending freight receipt as cash when making remittance. All remittances will be made direct to PEABODY SCHOOL FURNITURE Co., of Topeka, Kans. All agreements and specifications affecting this order are enumerated on this sheet or attached hereto in writing and any verbal agreement shall not alter same.

| "Signature | Official Title | Post Office Address |
|---|---|---|
| | President or Director | |
| | Secretary or Clerk | |
| | Treasurer | |

"Warrants are payable at —— Bank ——— City —— State——.
"By ———————, Salesman."

The plaintiff's petition was in three counts. The first count alleged that plaintiff is the assignee of the Peabody School Furniture Company, a corporation; that defendants constituted a voluntary, unincorporated association, of which George Boettner was secretary; that the furniture company sent its traveling salesman to attend a meeting of the committee and furnished him with printed blank forms of orders; that the committee by unanimous order of all the defendants as such committee purchased from the furniture company 510 opera chairs at the agreed price of $3.32 each, and that defendant Boettner as secretary of said committee, for himself and as the duly authorized agent of the other defendants, executed and delivered to the salesman to be returned to the furniture company, the written order and contract of said committee upon said printed blank forms for approximately 427 of said chairs. It was alleged that a copy of the order was attached and marked "Exhibit A," and the original order as received by the furniture company was so attached, but it was alleged that if any alterations were made after the execution and delivery of the same without the consent of the defendants, the said alterations were made without the authority and consent and without the knowledge of the Peabody School Furniture Company. It was alleged that subsequent to the signing of the order the committee increased the number of chairs to 510, and pursuant to the terms of such contract, the furniture company caused the chairs to be shipped to the defendants and the defendants received and accepted the same in full performance of the contract, and they have ever since retained the same; that defendants paid the sum of $300 on account; that they were still indebted to plaintiff in the sum of $1693.20 with interest from January 1, 1922, less $300, for which sum, together with costs, the plaintiff prayed judgment.

The second count of the petition was much the same, but it alleged that R. C. Everett had no authority to alter the order after it was signed, that if he did alter it he did so without any authority from the furniture company, and without its knowledge or consent,

and that any such alteration constituted a mere spoliation of the order, and it had no effect upon the order or the contract.

The third count did not mention the written order. It was in *indebitatus assumpsit* for goods sold, delivered, and accepted. It alleged that defendants, jointly and severally, were indebted to the plaintiff in the sum of $1693.20 with interest at six per cent per annum from January 1, 1922, less $300, paid thereon, June 11, 1923. It alleged that the defendants were the members of a voluntary association of which defendant George Boettner was the secretary; that the furniture company entered into an agreement and arrangement with defendants whereby the furniture company agreed to furnish the defendants with a large number of opera chairs for which defendants agreed to pay the furniture company their reasonable value, to-wit: the sum of $3.32 each; that pursuant to said agreement or arrangement the furniture company delivered to defendants 510 opera chairs, all of which the defendants received and accepted, and for which they agreed to pay the reasonable value, to-wit: $1693.20 or the sum of $3.32 each, and that said chairs were reasonably worth that amount.

The salesman testified for plaintiff that he took the order in the condition that it was transmitted to the furniture company; that all that was written thereon was written in the presence of the members of the committee; that he called the members of the committee together, and after the discussion of the terms, the members agreed to the order and authorized it to be signed by the secretary. The president and other officers of the furniture company testified that they knew nothing about the claim that alterations had been made in the order until after a former suit had been brought upon the order as received. The former suit terminated in a *nolle prosequi*. The defendants, except those who were not actually present at the meeting, all testified that it was distinctly understood in the meeting of the committee that the members of the committee were not to be held personally liable. The minutes of the meeting were introduced in evidence. They were as follows:

"Rockport, Missouri, November 1, 1921. All present except W. W. Holliway, Gore and W. W. Strickland. Motion made to contract for 427 chairs at $3.32 per chair including numbers, and company protecting us against decline up until June 1st based on present prices, no interest to January 1, 1922. Interest six per cent after January 1, 1922. Payable before January 1, 1923, and additional extension on one-third. No individual liability. Committee Secretary instructed to sign contract for chairs, as secretary of building committee. No further business."

These defendants also testified that the words in the original order which we have italicized were not in the order when it was signed

by the secretary, but that the terms of the order which the secretary signed by their authority were truly shown by the carbon copy which had been retained by the secretary and which was introduced in evidence by the defendants.

Written correspondence between the parties showed that defendants finally designated the number of chairs as 510, and that the order was accepted by the furniture company. The furniture company's catalogue was introduced to identify the chairs described in the order as those shipped to defendants, and evidence was introduced to show that there had been no decline in price.

The case was tried to the court without a jury. A request was made that the court make findings of fact separately from its conclusions of law as provided by section 1402, Revised Statutes 1919. Plaintiff asked many declarations of law presenting his theory of the case, but the findings of fact, conclusions of law and the judgment entered by the court are as follows:

"1. That at the meeting of the Atchison County Memorial Building Committee at which they agreed to purchase the furniture and execute the written contract therefor, the defendants sued in this action, except Joseph Durfee, were members of said Committee, and all were present except defendants W. W. Holliway, W. R. Strickland, James F. Fore, and W. R. Erwin, who were not present and did not personally participate in the making of said contract, and that Joseph Durfee, though present, had been named only as Township member and was not a member of the regular Committee.

"2. The court finds that 510 opera chairs of the description mentioned in order set out in plaintiff's petition were delivered by the plaintiff's assignee to the Atchison County Memorial Building Committee and accepted by it as satisfactory and have been retained since their reception and used for the purpose for which they were ordered.

"3. That the order for the said chairs was upon a printed blank furnished by The Peabody School Furniture Company, of Topeka, Kansas, for use in taking orders for school furniture and school supplies from school districts, upon and in which the order of the Committee was written on a top sheet, there being under the top sheet, on which the order was written and signed, two other similar printed blanks with .carbon papers intervening, which caused the written words, figures and signature to reproduce on the underlying blanks.

"4. The order in this case was signed

"'George Boettner, Sec'y.'

"'By unanimous order of the Committee in executive session.'

"5. When the order was delivered to the Peabody School Furniture Company, of Topeka, Kansas, it contained interlined in the body of the written portion of the order, above a carat, the words

'until next June,' and the word 'approximately' before printed words 'Total amount of order,' and following said printed words the figures '$1476.64.' These words and figures were in the handwriting of R. C. Everett, the salesman who received the order from George Boettner, Secretary of the Committee, and in whose handwriting was all of the remainder of the written portion of the order, but the words and figures mentioned above did not appear in the underlying copy of the order delivered by said Everett to Boettner at the time he signed the top sheet, and were not inserted in the order as signed after the same was so signed by said Boettner in the presence of the Committee present, or George Boettner, the Secretary, or with the knowledge or consent of any of the defendants.

"6. The court finds that a suit was first brought on the contract as altered, which suit was abandoned by the plaintiff, a *nolle* being entered, after his attention had been called to said alterations and that the present suit is brought on three counts on the common ground of *assumpsit* and *quantum meruit*.

"7. The court finds that said alterations were not made with the consent or knowledge of the defendants and that said alterations were made without the consent and without any knowledge on the part of the plaintiff or plaintiff's assignee, either at the time they received the order or at the time they furnish the goods thereunder, or that they in any wise consented to it in any way.

"8. The court finds that at the time that the order was given to R. C. Everett, the members of the Committee gave him orally the history from the beginning of this effort to build a Memorial Building and the things that had been done with respect to it and the subscriptions that had been made, and that there was something like $16,000 uncollected subscriptions and that these chairs were to be paid for out of the subscriptions and that they had a definite understanding with this agent, that they were not to be personally responsible for the amount due for the opera chairs obtained under the order.

"9. The court further finds that the plaintiff and the Peabody School Furniture Company of Topeka, Kansas, plaintiff's assignor, had no knowledge of any parol agreement made by their agent, R. C. Everett, with the Atchison County Memorial Building Committee, of which George Boettner was Secretary, either at the time they received the order or at any time before they delivered the goods thereunder.

"10. The court finds that said R. C. Everett was sufficiently a general agent of the Peabody School Furniture Company of Topeka, Kansas, that they would be bound by his act in making the alteration and that said R. C. Everett was sufficiently a general agent of that corporation to bind the Company by the oral contract that there

should be no personal liability on the part of the members of the Committee for the purchase price of said opera chairs.

"CONCLUSIONS OF LAW."

"1. That the contract in this case has been altered to the extent that it is not available to be sued on, that it is really void even for evidential purposes.

"2. That the contract itself was so ambiguous as to require parol explanation to ascertain what the contract really was, and that the form of the signature refers to something which took place simultaneously with the execution of the contract, although it was in parol and for that reason the door of parol evidence was opened and makes it a part of the contract.

"3. That therefore the plaintiff is not entitled to recover upon any of the counts of the petition and that the defendants are entitled to recover their costs herein.

"It is therefore by the court ordered, adjudged and decreed that the plaintiff take nothing by this suit and that the defendants recover of and from the plaintiff their costs in this behalf expended and that execution issue therefor."

Plaintiff's motion for new trial was overruled, exceptions were saved, and plaintiff appealed.

This is a suit at law. Consequently, the findings of fact of the trial judge have the force and effect of a special verdict. If there is substantial evidence supporting the findings they cannot be disturbed on appeal. However, we have carefully read the record and we find no evidence whatsoever that supports the finding that R. C. Everett "was sufficiently a general agent of the Peabody School Furniture Company that they would be bound by his act in making an alteration in the order and to bind the company by the oral contract that there should be no personal liability upon the part of the members of the committee for the purchase price of the opera chairs." The only evidence as to the scope of the authority of R. C. Everett was that he introduced himself as a salesman of the furniture company; that he prepared an order upon order blanks furnished by the company and presented the same for signature; that he permitted the order to be read by such members of the committee as desired to do so, and that he read the order in the presence of all; that the order, as altered, was accepted by the furniture company as shown by its letters and subsequent conduct in shipping the chairs. There is no dispute that the order contained this clause: "All agreements and specifications affecting this order are enumerated upon this sheet or attached hereto in writing and any verbal agreement shall not alter same." There is no evidence that the agent stated that he had authority to bind the company by an oral contract, or that he had any authority other than to solicit orders and submit

them to his principal for ratification. Even if he had done so, this would not bind the plaintiff. If apparent agency could be created by the mere statements of one who pretended to have authority, no one could control the extent of his obligations. One who deals with another as an agent is put upon inquiry concerning the extent of the agent's authority. In this case a written statement was presented to the defendants which clearly negatived the authority of the agent to enter into an oral contract. Some of the defendants read this statement before the contract was signed. The others knew that the purpose of the writing was to express the terms of the agreement, and if they permitted one of their number to sign in behalf of all without ascertaining the terms of the instrument, they did so at their peril. They all knew that the writing would be transmitted to the agent's principal for acceptance or rejection. Even if the agent had notified the principal that there were oral agreements not contained in the writing, yet the principal would not have been justified in relying upon such representations, without further assurance from the defendants that the report of the agent was true. When defendants executed the order, the recitation excluding oral agreements became their stipulation as well as that of the furniture company. The right of the principal to restrict the apparent scope of his agent's authority by provisions of this kind is well settled in this State. [Moorman v. Selsor, 226 S. W. 89; White v. Massey, 65 Mo. App. 260.]

The trial judge in his conclusions of law stated that the contract had been altered ''To the extent that it is not available to be sued on, that it is really void even for evidential purposes.'' In this State it has been held that the alteration of a written contract by one party without the consent of the other renders it void, even though the alteration did not materially change the effect of the instrument. But a distinction is drawn between an alteration which affects or attempts to affect the terms of a contract, and a mere memorandum or a collateral agreement which does not in any way change the effect of the instrument. [Highland Investment Co. v. K. C. Computing Scales Co., 277 Mo. 365, l. c. 376; Mercantile Co. v. Tate, 156 Mo. App. 236.] It is also held that when blanks are left unfilled in a contract there is implied authority to the one who receives the instrument to fill in the blanks according to the agreement of the parties. [David Plaut Securities Co. v. Cooper, 258 S. W. 455; May v. Steinhage, 298 S. W. 1048.] We therefore hold that the addition of the words ''approximately 1476.64'' after the printed words ''total amount of order'' was not an alteration.

It is plain that the printed blank was prepared with intent that the total amount should be inserted. The calculation of the amount depended upon the provision that the chairs should be furnished

at $3.32 each. Furthermore, these words did not purport to be contractual. The order itself could not be accepted until the defendants had definitely fixed the total price by stating the number of chairs that they would take. These words were a mere notation or memorandum.

However, the insertion of the words "before next June" tended to vary the terms of the order as written. There was ample evidence to sustain the findings of the trial court that these words were inserted without the consent of defendants and after the order was signed. But the trial court further found that these alterations were made without the consent and without the knowledge of the plaintiff or the plaintiff's assignor. This finding was supported by all of the evidence. In this State the alteration of an instrument does not destroy all causes of action of which it is evidence, nor does such alteration render it incompetent evidence of the terms of the contract which the law implies when one receives the property of another. unless the alteration was made with intent to injure or defraud. [Bank v. Walton, 187 Mo. App. 621; Bobb v. Taylor, 184 S. W. 1028; Barnhart v. Little, 185 S. W. 174; B. F. Avery & Sons Plow Co. v. Farrar, 250 S. W. 926; Riddle & Dees v. Castner, 202 Mo. App. 584; Marth v. Wiskerchen, 186 Mo. App. 515.] The proof is conclusive that the insertion of the words "before next June" was not done with any fraudulent intent. The defendants testified that these words were in accordance with the oral agreement as they understood it.

There is a distinction between an alteration which is made fraudulently and one which is made innocently. Both will invalidate the instrument as a contract, if the alteration is made by the party who is seeking to enforce the contract as altered; but if the alteration is made without intent to injure or defraud, then there is no reason why the party should be prohibited from using the instrument as evidence in determining the nature of the defendant's obligation, if one exists, subject to the right of the parties to show by oral evidence, which parts of the instrument have been altered.

Furthermore, in view of the findings of the trial court that the alteration was made without the knowledge or consent of the furniture company, it follows that the insertion of the words "before next June" constituted a mere spoliation of the instrument. A spoliation by one, other than a party to the contract, does not destroy the instrument as evidence nor the cause of action based thereon. This rule is applied where the spoliation is the act of an agent, because the agent has no authority to alter the terms of the writing. [Lubbering v. Kohlbrecher, 22 Mo. 596; Christian County Bank v. Goode, 44 Mo. App. 129, 1. c. 135; Medlin v. Platte County, 8 Mo. 235; Hays v. Odom, 79 Mo. App. 425.]

If a principal brings an action upon a written instrument, the terms of which have been altered through the unauthorized acts of his agent, oral evidence is admissible to show the spoliation, not for the purpose of defeating the instrument, but for the purpose of showing that the spoliation is no part thereof. In such case plaintiff cannot recover if he stands upon the terms of the contract as altered. It is contended by respondents that this rule defeats the plaintiff's right to recover in this case. The authorities cited by respondents to the effect that the principal ratifies the act of his agent in altering the contract when he sues upon it as altered, only hold, in effect, that plaintiff cannot declare upon one contract and recover upon another. Judge ELLISON, speaking for this court, in the case of Paul v. Leeper, 98 Mo. App. 515, announced what we believe to be the true rule, thus:

"Plaintiff has sued upon the notes as they now appear and his theory has been that they have not been altered. If it was a mere spoliation, then plaintiff should have presented that theory in his case. It has been ruled that when one sues on a contract in its altered state he adopts the alteration and makes it his own. [Citing Kelly v. Thuey, 143 Mo. 435; Bremen Bank v. Umrath, 42 Mo. App. 528.] Notwithstanding such rule, we can very well see that where one sues upon a note without knowledge of its having been altered, he should not be bound by the alteration if made by a stranger. But, in such instance, where the alteration is developed, he should, in a proper way, have that saving feature of his case presented to the court."

The plaintiff in this case brought himself very clearly within the rule announced in Paul v. Leeper, supra. The general officers of the corporation knew nothing about the contract, except what they gleaned from the order as received by them and from subsequent letters from the defendants. The furniture company's agent swore that no alterations had been made. When a prior suit came to trial, plaintiff for the first time discovered that the original order as received by the furniture company was not identical with the carbon copy in the possession of the defendants. Plaintiff then dismissed and brought this suit by a petition, the allegations of which are supported by the introduction in evidence of either copy of the contract. It is true that in two counts he referred to the contract as Exhibit A, and attached the altered instrument to the petition, but he also alleged that if any alterations had been made therein it was not done with the knowledge or consent of the furniture company, and was a mere spoliation. The third count avoided all mention of the written contract. The plaintiff could not know which was the true instrument until the court had made its finding of fact. Under the circumstances the plaintiff did not ratify the contract by

bringing suit. He ratified the terms of a contract which was, according to all of the evidence, executed by the parties; but he made no attempt to enforce any term of the contract contained in the alteration.

Since the insertion of the words was a mere spoliation by an unauthorized agent and the petition declared upon the true contract, without seeking to enforce any of the terms as expressed or affected by the spoliation, and since the insertion of the objectionable words was not done with any fraudulent intent, the court erred in declaring that the contract was "not available to be sued upon, that it was really void even for evidential purposes." The plaintiff ratified the true contract as alleged in the second count, and proved a case *in assumpsit* under the third count of the petition.

The trial court declared as a matter of law that "the contract was so ambiguous as to require parol explanation to ascertain what the contract really was, and that the form of the signature refers to something which took place simultaneously with the execution of the contract, although it was in parol, and for that reason the door of parol evidence was opened and makes it a part of the contract." It is not true that an ambiguity in a written contract opens the door for parol evidence, except for the purpose of explaining the ambiguity. The contract provided that "should there be a decrease in the prevailing price below the price paid in this case that same decrease is to be rebated by company." The trial court found that the words "before next June" were improperly inserted after the execution of the order. That provision, without the spoliation, would have justified parol evidence to show what was a reasonable time within the meaning of that clause, had that been a disputed issue. It was proper to permit evidence to identify the chairs. Otherwise, we think the contract was quite definite. It became definite as to the number of chairs and the total price when the defendants wrote a letter to the furniture company designating the number to be shipped. If it were true that an ambiguity in a written instrument would justify the introduction of parol evidence to engraft entirely new agreements upon the contract then any written contract which contained a single ambiguous phrase would amount to no more than an admission, even as to those terms that were clearly expressed, and would only be entitled to such weight as the discretion of a jury might dictate after hearing the writing orally impeached in all its terms.

Respondents claim that where the execution of a written instrument has been induced by an oral stipulation or by an agreement made at the time, on the faith of which the party executed the writing, and without which he would not have executed it, but such an agreement or stipulation is omitted from the writing, even if its omission is not due to fraud or mistake, evidence of the oral agree-

ment or stipulation may be given, although it may have the effect of varying the contract or obligation evidenced by the writing, citing in support thereof 22 C. J. 1212, two Pennsylvania cases, and Kinkaid v. Levy, 151 Mo. App. 352. The citation of authorities under the text in Corpus Juris does not include the citation of any Missouri case. The case of Kinkaid v. Levy, cited by appellant, does not announce the doctrine contended for. There is no rule more firmly established in Missouri than the rule that parol evidence is not admissible to show the intention or the purpose of the parties in executing an unambiguous written contract. [Kelly v. Briggs, 290 S. W. 105; Owen v. Ellis, 64 Mo. 77; Davis v. Lumber Co., 212 Mo. App. 693; Hanna v. Buford, 191 Mo. App. 654; Jenkins v. Chemical Co., 169 Mo. App. 534; Muehling v. Magee, 168 Mo. App. 675; McDaniel v. United Railway, 165 Mo. App. 678; Pleadwell v. Missouri Glass Co., 151 Mo. App. 51; Renfro v. Metropolitan Life Ins. Co., 148 Mo. App. 258; O'Brien v. Ash, 169 Mo. 283; Fisher v. Chitty, 62 Mo. App. 405; Hunt v. Hunter, 52 Mo. App. 263; Stillwell v. St. Louis, etc., R. Co., 39 Mo. App. 221.]

The respondents in this case attempt to show a limitation of liability by a contemporaneous oral understanding. Under the Missouri authorities that may not be done. [Betts v. Harvey, 297 S. W. 995; First National Bank v. Limpp, 288 S. W. 957; Scullin Steel Co. v. Mississippi Valley Iron Co., 308 Mo. 453; Earle v. Woodruff, 274 S. W. 107.]

Respondents further contend that the written contract recites that it was executed by the unanimous order of the committee in executive session; that this amounts to a reference to the minutes of the meeting of the committee, and that therefore the order and the minutes should be construed together. The recitation amounts to no more than an assurance that the secretary contracted on behalf of the whole committee, not merely for himself. It does not refer to the minutes as indicating the terms of the contract, nor does it even indicate that any minutes were kept. No defendant could have possibly understood that the agent's recitation of his authority was intended to put the officers of a Kansas corporation to the trouble of coming to Rockport in the State of Missouri to ascertain whether or not the committee had kept minutes of the meeting, and if so, whether such minutes were at variance with the terms of a written order which was apparently complete. To so construe the agent's recitation of authority would be to strike out of the order the statement that all agreements and specifications affecting the order were enumerated upon the order or attached thereto in writing, and that any verbal agreement should not alter the same. It has been held in this State that parol evidence is not admissible to cut down the operative words of a deed. [Weissenfels v. Cable, 208 Mo. 515; Willoughby v. Brandes, 297 S. W. 54; Owen v. Ellis,

64 Mo. 77.] Under section 2188, Revised Statutes 1919, the acknowledgment of a deed of a corporation must recite that the officer signed and sealed by authority of the board of directors. According to the contention of respondents, every deed to Missouri real estate executed by a corporation may be impeached by the minutes of the meeting at which the deed was authorized, so that the estate may be reduced from a fee simple to an estate for years, even though the purchaser lived in a far country.

Respondents contend that the contract shows upon its face that the committee members were not to pay for the opera chairs out of their private funds. This contention is based upon the fact that the members of the committee purported to act as a voluntary association which was not organized for profit, but to promote an enterprise of public interest. To sustain respondents' contention would be to ignore the well-settled rule that the members of a voluntary association who are instrumental in contracting debts in the prosecution of the association's business are personally liable. If they are not, then no one is liable. A person has a legal right to sell goods to another upon an agreement that he will look only to a certain fund for payment, and will not hold the purchaser individually liable. But this is such an unusual and hazardous agreement that no court will read such terms into a contract by construction upon the sole ground that the purchaser was acting in behalf of a voluntary association. In this case the so-called fund consisted of subscriptions which had been signed by various persons in the vicinity of Rockport. The furniture company accepted the order without requiring a statement of the list of the subscribers, the number or amounts of the subscriptions, the amount already collected, or the financial responsibility of the subscribers, and without exacting any provision insuring a prosecution of the claims should the subscribers fail to pay. There is nothing which justifies the inference that the furniture company had extended credit solely to the inchoate fund, and not to the parties to the contract. If the defendants had any such intention they failed to communicate it to the furniture company.

The case of Davis & Rankin v. Hendrix, 59 Mo. App. 444, does not sustain the respondents' contention. In that case a firm of contractors entered into a contract with forty-nine persons who were described as subscribers, to build and equip a butter and cheese factory. The contract recited: "For a faithful and full performance *of our respective parts of the above contract,* we bind ourselves, our heirs, executors, administrators and assigns." Under this recitation the name of each subscriber appeared, and the amount of his subscription was set opposite his name. The court held that this indicated that each subscriber only bound himself to the extent of the amount of his subscription. In the case of

Riffe v. Proctor, 99 Mo. App. 601, this court held that the pastor of a.Baptist church, who was employed with full knowledge of the rules and practice of the congregation that his salary was payable out of the voluntary contributions of the members, contracted in reference to the practice, and could only hold individual members liable to the extent of their individual subscriptions or apportionments. Neither of these cases is at variance with anything we have said. The other cases cited by respondents merely distinguish between the liability of a member of a voluntary association not organized for profit, and the liability of a partner. They hold that the members of the unincorporated association, not organized for profit, are not liable for obligations incurred in behalf of the association unless they participate in incurring the obligations.

It is finally insisted by respondents that plaintiff cannot recover *in assumpsit* on an implied promise in the face of an express agreement of the parties upon the subject, and cite in support thereof 5 C. J. 1385, wherein it is stated that the law will not imply a promise against the express declarations of the party to be charged, made at the time of the supposed undertaking, unless such party is under legal obligation, paramount to his will, to perform some duty. However, it is further stated in 5 C. J., at page 1386, that—

"Where an express contract, not under seal, has been fully performed on plaintiff's part and nothing remains to be done under it but the payment of money by defendant which is nothing more than the law would imply against him, plaintiff may declare specially on the original contract or generally in *indebitatus assumpsit* at his election. In such a case it is said the plaintiff does not repudiate the contract nor seek to avoid it, but, under his common count in *indebitatus assumpsit* as for a *quantum meruit* of compensation, he offers the contract in evidence to sustain his case and his proof of compliance with its terms. Under these circumstances defendant will not be permitted to assert that an express contract exists, for the purpose of defeating a recovery on an implied contract. And in case plaintiff chooses to pursue the latter remedy he may put his contract in evidence in proof of the particulars of his general right." [See, also, American Surety Co. v. Fruin-Bambrick Const. Co., 182 Mo. App. 667, and authorities there cited.]

The respondents' position upon this point is inconsistent. They claim that the original contract was destroyed by an alteration. If that were true, there would still be an implied promise to pay the reasonable value of the chairs which were received and retained by the defendants under circumstances not amounting to a gift, because the evidence showed that the changes in the original order were not made with any fraudulent intent.

We have discussed at length the questions of the spoliation of the order and the competency of parol testimony to limit the liability of defendants, partly because we have been invited by the parties to do so, and partly because those questions may be important upon a retrial of the case. We do not think they were vital to a determination of the case upon this record. If the trial court had excluded the original order, yet the carbon copy was in evidence, and it fully supported the allegations of the second and third counts of plaintiff's petition. If parol evidence could be introduced to show the oral understanding of the members of the committee, yet that understanding was not communicated to the furniture company. On the contrary, the committee permitted a written order to be forwarded which recited that all agreements and specifications affecting the order were enumerated therein or attached thereto in writing, and any verbal agreement should not alter the same.

Appellant has complained that the court erred in refusing several declarations of law requested by him. It is not necessary to discuss them because we have already outlined what we consider the true rule upon which the case should have been tried.

There was ample evidence to support the finding of fact that W. W. Holliway, W. R. Strickland, James F. Gore and W. R. Erwin were not present and did not personally participate in the making of the contract. It follows that the judgment in this case was right as to them. The court's finding that Joseph Durfee, though present at the meeting, had been named only as a township member and was not a member of the regular committee, though sustained by evidence, is without legal significance. The voluntary association was organized informally. If Joseph Durfee was present and personally participated in the execution or authorization of the contract, his liability depends upon the fact that he was a member of the association and voluntarily participated in incurring an obligation in the prosecution of its purposes. The manner in which he became a member is unimportant.

The judgment is reversed and the cause remanded as to all defendants except W. W. Holliway, W. R. Strickland, James F. Gore and W. R. Erwin; as to the four defendants last mentioned, the judgment is affirmed. *Lee, C.,* concurs.

PER CURIAM:—The foregoing opinion by BARNETT, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.