**SCHODDE et al. v. UNITED STATES.**
**No. 7171.**

Circuit Court of Appeals, Ninth Circuit.
March 12, 1934.

James R. Bothwell, of Twin Falls, Idaho, for appellants.

John A. Carver, U. S. Atty., and Frank Griffin and E. H. Casterlin, Asst. U. S. Attys., all of Boise, Idaho, and B. E. Stoutemyer, Dist. Counsel, U. S. Reclamation Service, of Portland, Or.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

On June 13, 1918, the United States leased certain public lands, situated in Idaho, to "Geo. H. Schodde, W. W. Custer, Louis Nelson, C. H. Matson and Claude Myers, doing business under the firm name and style of Lincoln and Minidoka County Cattle and Horse Growers' Association, together with such owners of horses and cattle as now are or may hereafter become members of said association." The lease was to run for a period of 3 years at an annual rental of $1,-855.

Action was commenced in the District Court of the United States for the District of Idaho on September 22, 1920, by the United States to recover from the parties heretofore named, rent in the sum of $1,-855.00 alleged to be due under the lease on December 1, 1919. By the complaint the above-named were designated as copartners, but in their answer this was denied, and it was alleged that they were members of a "voluntary association" consisting of fifteen members instead of the five named, and prayed that all of the members of the said association be made parties to the action. This accompanied a general denial of all the allegations of the complaint, together with other affirmative defensive matter, the gist of which was that the government failed to protect this pasturage land from being used by sheep.

Plaintiff's motion for judgment on the pleadings was sustained and judgment entered March 7, 1921, in favor of plaintiff and against the said five defendants.

The judgment was never appealed from nor set aside.

In October of 1929 the United States marshal levied upon certain money of W. W. Custer, one of the defendants in the action above noted. Custer instituted a suit to enjoin this action of the marshal, but upon motion of the marshal the petition for injunction was dismissed. The ground upon which the injunction was sought was that under the statutes of Idaho execution may not issue after five years have elapsed from entry of judgment. Custer appealed to this court, which affirmed the order of the District Court. Custer v. McCutcheon, 41 F. (2d) 354. Petition for writ of certiorari made to the Supreme Court of the United States was granted, and, after hearing, the judgments of the Circuit Court of Appeals and of the District Court were reversed (Id.,

283 U. S. 514, 51 S. Ct. 530, 75 L. Ed. 1239) upon the ground that the state statutory period within which execution may issue upon a judgment had elapsed, and that under Rev. St. § 916, the United States (28 USCA § 727) was bound thereby.

The present action was brought June 15, 1931, by the government upon the judgment in the original suit prosecuted by the United States against Schodde et al., and the complaint pleaded the judgment (obtained 10 years before) and that it had not been reversed, set aside, modified, or paid. Three of the original defendants, Schodde, Custer, and Nelson, appeared and contested the action.

On September 26, 1932, defendants Custer and Nelson filed an amended answer which was later adopted by defendant Schodde, and which comprises fifty printed pages of the record. By the third paragraph of this answer the defendants affirmatively pleaded the judgment theretofore rendered, admitting that they had been duly and regularly served with process, had appeared in the action, that the court had obtained jurisdiction of said defendants, and the said judgment was rendered against them, but the defendants set up that the court had not obtained jurisdiction of the subject-matter of said action or of all parties interested therein. The fourth paragraph of the amended answer further admitted that the judgment had never been reversed, set aside, or modified, but denied that it was a legal or valid judgment. They further pleaded in a fifth paragraph that they had no information sufficient upon which to base a belief that said judgment had not been transferred or assigned, and therefore denied these allegations in the complaint, but in the same paragraph of the answer alleged that this denial was based upon a subsequent affirmative defense where the ownership of said judgment was attacked as a proposition of law. It was admitted that defendants had not paid the judgment or any part thereof.

The amended answer then pleaded several affirmative defenses: First, alleging that the suit instituted by Custer to enjoin the United States marshal from serving the execution issued upon the judgment constituted an action upon the same subject then pending between the same parties. As a second affirmative defense pleaded the same suit as pending and as res adjudicata of the subject-matter in controversy. As a third affirmative defense pleaded that the court in rendering the judgment in the original action, upon

which the action at bar is based, did not have jurisdiction of the subject-matter and did not have authority to render such judgment, all of which would affirmatively appear on the face of the record, and the amended answer then sets forth the entire record in the previous action. For a fourth affirmative defense the amended answer alleged that the judgment dated March 7, 1921, is based upon a right created by the statutes of Idaho, which right expired prior to the institution of the suit. A fifth affirmative defense set forth that the lands described, and the subject of the lease agreement upon which the judgment was rendered, were for the benefit of the Minidoka project in Idaho, and that the Minidoka irrigation district, by virtue of certain statutes pleaded, as alleged would be entitled to any moneys recovered on the judgment herein, and therefore the United States was not the real party in interest in the suit.

To this amended answer the plaintiff filed a motion to strike that part of paragraph 3 in defendants' amended answer which denies that the court had jurisdiction of the subject-matter of the action or of all the parties interested, and paragraph 5 of the amended answer as not constituting a valid denial, and the motion also was to strike out each and every one of the five affirmative defenses. At the same time a separate demurrer was filed attacking all and several of the five affirmative defenses.

It was stipulated by the respective parties that a jury be waived, and the case was heard by the court without a jury. Thereafter testimony was taken, and it was agreed between the parties that the demurrer and the motion of the plaintiff to strike should be considered together with the testimony taken, and at the close of the trial the plaintiff moved the court to enter judgment, and the defendants moved for judgment on the affirmative matter set forth in their amended answer. Defendants also moved to abate the case as to defendants Geo. H. Schodde, W. W. Custer, and Louis Nelson.

In its memorandum opinion the court pointed out that the Supreme Court in the case of Custer v. McCutcheon, 283 U. S. 514, 51 S. Ct. 530, 75 L. Ed. 1239, held that the plaintiff here was not precluded from bringing an action upon the judgment, but merely from having execution in the form provided by state law.

Continuing, the court said [1]:

"* * * This being an action upon a judgment it would seem that the decision of the Supreme Court is conclusive upon that question. That leaves to be disposed of the demurrer and motion of the plaintiff to strike the affirmative defenses referred to in the answer of the defendants.

"First: As to the first affirmative defense the contention is made that there was another action pending in this court at the time this action was filed and that the case referred to in Custer v. McCutcheon, 283 U. S. 514, 51 S. Ct. 530, 75 L. Ed. 1239, is still pending. The subject matter in that case was the right to the issuance of an execution while in the pending case the subject matter is the right of the government to renew a judgment. They are not the same subject matters at all.

"Second: In the second affirmative defense the contention is made the same as in the first and is disposed of in the first affirmative defense as the subject matter of the two cases is not the same.

"Third: As to the third affirmative defense the contention is made questioning the jurisdiction of the court for the reason the court did not have jurisdiction of the subject matter. The original case and the present case, as has been stated, involve different subject matters. The court did have the jurisdiction in that case as it was one where the government was suing upon a lease, while the present case is one where the government is suing upon a judgment. The judgment in the original case is a final one and has adjudicated all matters relating to a lease, while the present suit is merely one asking for a renewal of a final judgment.

"Fourth: In the fourth affirmative defense the contention is made whether the statutes of Idaho are statutes of limitation or a grant of right. This question was disposed of in the opinion of this court above referred to.

"Fifth: In the fifth affirmative defense the contention is made which relates to the merits which were disposed of in the original case and which involved the right of the government to lease project lands and the question was disposed of by this court."

Accordingly, judgment was entered in favor of the plaintiff, from which defendants have appealed to this court.

The assignments of error are somewhat involved and obscure. Comments of the trial court referring to the demurrer and motion

---

[1] The essential parts of this opinion are included in this quotation.

of the plaintiff to strike the affirmative defenses are set forth as error, but most of these do not directly or even indirectly strike anything from the amended answer, although the final conclusion that "The uncontradicted evidence shows that the judgment sued upon in this case is a final one and has not been paid and for that reason the plaintiff is entitled to judgment as prayed for in the complaint," is clear-cut and conclusive.

While the rulings of the court and the sufficiency of the assignments of error based thereon might well be questioned, we have examined into the merits of the contentions presented on this appeal.

The first and fifth assignments of error assert the right of the defendants to collaterally attack the original judgment, and will hereafter be considered together.

■■ The second assignment, which assumes that the court struck out the allegations of paragraph 5 of the answer, where upon information and belief the defendants deny the ownership and right of plaintiff to the judgment, limiting the denial, however, to the facts pleaded in the fifth affirmative defense, and as to which defense it is also assumed the court sustained plaintiff's demurrer and motion to strike and which is the basis for the seventh assignment of error, both assignments as to legal effect being the same, it is proper that they should be considered together. The allegations are insufficient to bring in question the ownership of the judgment sued upon by the plaintiff, for the reason that the defense as pleaded was available to the defendants at the time of the first trial. The lease sued upon in the primary action was entered into between the United States and the defendants, and the judgment was in favor of the plaintiff. The most that can be said as to the interest that the settlers of the Minidoka project may have in this action is that they might be entitled to be credited with the accumulated net profits derived from the leasing of the lands in question. The statute relied upon in this connection by defendants is title 43 USCA § 501, to wit:

"Disposition of profits of project taken over by water users. Whenever the water users take over the care, operation, and maintenance of a project, or a division of a project, the total accumulated net profits, as determined by the Secretary, derived from the operation of project power plants, leasing of project grazing and farm lands, and the sale or use of town sites shall be credited to the construction charge of the project, or a division thereof, and thereafter the net profits from such sources may be used by the water users to be credited annually, first, on account of project construction charge, second, on account of project operation and maintenance charge, and third, as the water users may direct. No distribution to individual water users shall be made out of any such profits before all obligations to the Government shall have been fully paid."

Title 43 USCA § 373, provides as follows: "*General Authority of Secretary of Interior.* The Secretary of the Interior is hereby authorized to perform any and all acts and to make such rules and regulations as may be necessary and proper for the purpose of carrying the provisions of this chapter into full force and effect."

It is nowhere pleaded that there has been or will be any net profits to be distributed among the settlers, should the Secretary of the Interior determine that they are entitled to such profits, or when or at what time such distribution would or should be made. The United States is entitled to collect this debt from defendants as the legal holder and owner of the judgment, and it is the only party that can satisfy and discharge the judgment. Further, before there can arise any profits, all obligations to the government on account of construction charge of the project and charges for operation and maintenance must all have been fully paid. It is not alleged that this has been done. Here the plaintiff is suing on an unpaid judgment, but, even if the project owners had an interest under the statute, the United States would still be the proper party plaintiff, for a " * * * person may sue as a real party in interest, if he can legally discharge the debtor and the satisfaction of a judgment rendered will discharge the defendant, although the amount recovered is for the benefit of another." 20 R. C. L. 666, and cases cited.

■ As to the plea that there is another action pending and the plea of res adjudicata covered by the third and fourth assignments, respectively, it is sufficient to say that the essentials of such pleas are missing in both instances. Neither the subject-matter nor the parties are the same. 1 C. J. 61, § 80. In Custer v. McCutcheon, supra, the United States marshal was the defendant, and the action was for an injunction. In Privett et al. v. U. S. (C. C. A.) 261 F. 351, 352, citing Lyon v. Perin & Gaff Mfg. Co., 125 U. S. 698, 700, 8 S. Ct. 1024, 31 L. Ed. 839, it is said: "It is well settled that, in order to render a matter res adjudicata, there must

be a concurrence of the four conditions, viz.: (1) Identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality in the persons for or against whom the claim is made."

The sixth assignment of error is based upon the failure of the court to permit the plea that the state statute, which limits the time for the commencement of an action upon a judgment to 6 years (Code Idaho 1932, § 5-215), might properly be invoked against the United States. As above shown, the United States was the real party in interest in this case. Further, this suit is predicated upon a judgment which runs in favor of the United States. The law is well established that the government is not bound by a state statute of limitations in the absence of a clear manifestation of such intention. U. S. v. Nashville, C. & St. L. R. Co., 118 U. S. 120, 125, 6 S. Ct. 1006, 30 L. Ed. 81. The holding of the Supreme Court against the issuance of an execution upon this judgment has no bearing upon the statute of limitations; the issuance of the execution was a matter of procedure outlined by the state statute. That an execution could not be issued did not abrogate the judgment. The Supreme Court in the case of Custer v. McCutcheon, supra, which made the ruling upon the execution in this case, in its opinion indicated that the proper procedure to secure satisfaction would be to bring a suit upon the original judgment. The sovereign is not bound by a statute of limitation unless it so indicates by statute. No authority is cited where the United States has indicated its purpose to be bound by the statute of limitations of the state of Idaho.

We next consider the first and fifth assignments of error, which assert the right of the appellants to collaterally attack the judgment of the original action and upon which the judgment appealed from is based. "It is the well settled rule that parties to an action or proceeding will not be permitted to attack the judgment rendered therein, collaterally, except where such judgment was absolutely void for want of jurisdiction in the court rendering it." 15 R. C. L. 840. Where the court has jurisdiction of the subject-matter and the parties, its judgment cannot be impeached for errors occurring at the trial. "Jurisdiction of the subject matter has reference to the cause of action or the relief sought. It does not mean simply jurisdiction of the particular case then occupying the attention of the court but jurisdiction of the class of cases to which the particular case belongs, and over which the authority of the court extends. * * *" Freeman on Judgments (5th Ed.), vol. 1, p. 675, § 337; In re Casey (D. C.) 195 F. 322, 328. In Foltz et al. v. St. Louis & S. F. R. Co. (C. C. A.) 60 F. 316, 318, the court said:

"* * * Is every judgment in which the court committed an error in the decision of one of these questions, without the jurisdiction of the court, a nullity, and only those in which it has made no mistake valid? Jurisdiction of the subject-matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power. It is not confined to cases in which the particular facts constitute a good cause of action, but it includes every issue within the scope of the general power vested in the court, by the law of its organization, to deal with the abstract question. Nor is this jurisdiction limited to making correct decisions. It empowers the court to determine every issue within the scope of its authority according to its own view of the law and the evidence, whether its decision is right or wrong, and every judgment or decision so rendered is final and conclusive upon the parties to it, unless reversed by writ of error or appeal, or impeached for fraud. (Cases cited.) Wherever the right and the duty of the court to exercise its jurisdiction depends upon the decision of a question it is invested with power to hear and determine, there its judgment, right or wrong, is impregnable to collateral attack, unless impeached for fraud. * .* *"

And in Hartford Life Ins. Co. v. Johnson (C. C. A.) 268 F. 30, 34, it was said: "It is true the jurisdictional allegations of a complaint may be put in issue by proper plea, but even in such a case the court in deciding such a plea exercises jurisdiction. Even if it sustains its jurisdiction erroneously, the judgment is not subject to collateral attack, although cause for reversal upon appeal. * * *"

The jurisdiction of the federal District Courts extends generally to cases in which the United States is a party, and here that court also had jurisdiction over the subject-matter.

Nor can the defendants successfully attack the original judgment for lack of jurisdiction of the parties. Each of the defendants named was served with process, and they appeared and answered. They were the

parties named in the contract. In the answer filed it was alleged that they were not partners, but were members of a voluntary association consisting of fifteen members. Plaintiff moved for judgment on the pleadings, and the motion was granted. This motion assumed that, even though true, the allegations of the answer were no defense. The court accepted that allegation as a true fact. If the court erred in its judgment, it cannot be here impeached. "A judgment or decree cannot be impeached collaterally on account of an alleged misjoinder or nonjoinder of parties. * * *" 34 C. J. 559, citing Hefner v. Northwestern Mt. L. Ins. Co., 123 U. S. 747, 8 S. Ct. 337, 31 L. Ed. 309. Nor can it be said that the holding of the court that the liability of the members of a voluntary association is joint and several and that each member is individually liable for all the debts of the association to third parties is not supported by authority. Nolan v. McNamee, 82 Wash. 585, 144 P. 904; Murphy v. Holliway, 223 Mo. App. 714, 16 S.W.(2d) 107.

The defendants, having made no attempt to relieve themselves from the judgment rendered against them in the original action by appeal or otherwise, cannot here attack its validity.

" * * * Upon what principle can a defendant before the court claim its judgment to be void as against him, when the court had jurisdiction over him and over the subject matter, and he chooses to take no measures to correct its error?" Freeman on Judgments (5th Ed.) vol. 1, p. 648.

The foregoing discussions fully cover the other assignments of error.

Judgment affirmed.